(118 P.3d 1287)

No. 92,442

STATE OF KANSAS, *Appellee*, v. NELSON H. BOYKINS, *Appellant*.

—

Opinion filed July 15, 2005.

*Heather Cessna*, assistant appellate defender, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Nola Foulston*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before RULON, C.J., GREENE, J., and KNUDSON, S.J.

KNUDSON, J.: Nelson H. Boykins appeals his conviction for possession of cocaine and the sentence imposed of 74 months' incarceration. Boykins raises two issues: (1) Did the trial court err in overruling the defendant's motion to suppress evidence and statements; and (2) is the sentence imposed unconstitutional under *Ap-*

*prendi v. New Jersey,* 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000)?

We conclude Boykins was unreasonably detained by the arresting officer after being lawfully stopped for a traffic infraction. Accordingly, the judgment of the trial court must be reversed and the case remanded for further proceedings. Our decision renders the *Apprendi* issue moot. *Cf. State v. Ivory,* 273 Kan. 44, 46, 41 P.3d 781 (2002) (proof of prior convictions as sentencing enhancements need not be submitted to a jury and proved beyond a reasonable doubt).

On December 2, 2002, police officers of the Wichita Police Department were watching a home for suspected drug activity. At about 12:19 p.m., Detective Jason Miller saw a tan-colored Honda pull up in front of the home and a female passenger get out of the car and go into the home. Before entering the home, Miller saw her remove something from her pants pocket and hand it to the male driver. Detective Miller followed the car, keeping it in his line of vision.

Miller observed the car turn without signaling and called Officer Mackey, who was assisting in the surveillance of the home. Officer Mackey stopped the vehicle at about 12:22 p.m. The defendant, Nelson H. Boykins, was the driver. Mackey told Boykins he had been stopped for failure to signal a lane change. Mackey observed Boykins' "jittery eyes," shaking hands, and his generally nervous behavior, which included a "shaking" voice. Mackey requested Boykins to step from the car.

Mackey asked Boykins if he had a weapon, to which he responded negatively. Mackey asked if Boykins was in possession of narcotics based upon actions observed at the alleged "narcotics house." Boykins looked to his left breast shirt pocket, paused, looked back at Mackey, and answered "yes." Boykins started to reach toward his pocket; Mackey requested Boykins lower his hands. Mackey found a whitish-colored stone in a baggie in Boykins' front left shirt pocket. Boykins was placed into custody at about 12:26 p.m. Two more plastic bags were found in the car upon the inventory search. The contents of all three bags were later proven to be cocaine.

Boykins was charged with possession of cocaine. He subsequently filed a motion to suppress evidence and statements, alleging unreasonable detention under the Fourth Amendment to the United States Constitution. After hearing the evidence presented at the suppression hearing, the trial court concluded the officers did have reasonable suspicion to investigate a possible drug violation and denied Boykins' motion to suppress. A bench trial was held based upon stipulated facts with the suppression issue preserved. The court found Boykins guilty of possession of cocaine after a prior conviction, pursuant to K.S.A. 65-4160(b). Boykins was sentenced to 74 months' imprisonment. His appeal is timely.

When reviewing a motion to suppress evidence, the appellate court determines whether the factual underpinnings of the trial court's decision are supported by a substantial competent evidence standard. However, the ultimate legal conclusion drawn from those facts is a legal question requiring the appellate court to apply a de novo standard of review. The appellate court does not reweigh the evidence. *State v. Vandervort*, 276 Kan. 164, 169, 72 P.3d 925 (2003).

The State concedes Boykins' car was not stopped for suspicion of a drug crime. The sole reason for the stop was the failure to signal a lane change. A traffic stop is a seizure under the Fourth Amendment. See *State v. DeMarco*, 263 Kan. 727, 733, 952 P.2d 1276 (1998). The scope and duration of such a seizure must be tied to the traffic stop. 263 Kan. at 733. If the scope of questioning goes beyond that necessary to reasonably effectuate the reason for the stop, the Fourth Amendment requires reasonable suspicion that the person stopped has committed, is committing, or is about to commit a crime. 263 Kan. at 733-34.

In this appeal, Boykins argues his Fourth Amendment rights were violated when Mackey detained him for questioning about possession of narcotics. The State concedes the questioning of Boykins and the subsequent discovery of cocaine exceeded the scope and duration of the traffic stop. The State argues Officer Mackey had a reasonable and articulable suspicion that Boykins was engaging in illegal drug activity based upon (a) Detective Miller's observations at the suspected drug house and (b) Boykins' high

state of nervousness. "What is reasonable is based on the totality of circumstances and is viewed in terms as understood by those versed in the field of law enforcement." *State v. Toney*, 253 Kan. 651, 656, 862 P.2d 350 (1993).

"A person's mere propinquity to others independently suspected of criminal activity does not, without more, authorize a *Terry* stop unless the officer has reasonable suspicion directed specifically at that person." *State v. Morris*, 276 Kan. 11, 25, 72 P.3d 570 (2003).

The State concedes what it must: Boykins' proximity to the location where drug activity was suspected and a female passenger handing him an unidentified object does not provoke reasonable suspicion of criminal activity. There is no evidence in the record that the female passenger was involved in the trafficking of drugs. There is no evidence as to the size or shape of the object she handed Boykins before entering the house. The female passenger handed Boykins the object before entering the house. There is no showing of the relationship between Boykins and the passenger. Here, we are one step removed from the factual circumstance in *Morris*. Boykins' "mere propinquity" to the unidentified female passenger who entered a home under suspicion for drug activity. There is no showing the female passenger was a suspect in any drug activity.

In *United States v. McRae*, 81 F.3d 1528, 1534 n.4 (10th Cir. 1996), the court stated:

"We have held that nervousness alone is not sufficient to justify further detention; however, in combination with other suspicious circumstances, it might contribute to a finding of articulable suspicion. Cf. *United States v. Fernandez*, 18 F.3d 874, 879-80 (10th Cir. 1994) ('While nervousness may also appear as a factor in many traffic stop cases, we have never held that by itself it creates a reasonable suspicion of criminal activity.')."

In *United States v. Hall*, 978 F.2d 616, 621 n.4 (10th Cir. 1992), not a traffic stop case, the court stated succinctly why nervous behavior is of questionable value in assessing reasonable suspicion of criminal activity:

" 'In all search and seizure cases of the type here concerned, the Government argues that a defendant's nervousness, either alone or in conjunction with other factors, supports the contested search or seizure, This repetitive assertion by the

Government in all cases of this kind must be treated with caution. It is common knowledge that most citizens, . . . whether innocent or guilty, when confronted by a law enforcement officer who asks them potentially incriminating questions are likely to exhibit some signs of nervousness.' *United State v. Millan-Diaz,* 975 P.2d 720, 722 (10th Cir. 1992)."

In *DeMarco,* the Kansas Supreme Court addressed the defendants' argument that a stop exceeded what was reasonable after their car was stopped for making a lane change without signaling. The arresting officer, Trooper Michael Weigel, testified the scope and duration of the stop changed after he noted the defendant DeMarco's nervousness during routine questioning. In summarizing Weigel's testimony on this point, the court stated:

"Weigel said that he usually bases reasonable suspicion on three to five indicators. At the preliminary hearing, Weigel testified that DeMarco's nervousness was the 'number one' factor forming the basis of his reasonable suspicion. Weigel's experience was that people are nervous when he first stops them, but as he talks to them, nervousness subsides. According to Weigel, DeMarco's nervousness escalated. He was fidgety, would not sit still, and could not come out with a specific answer about what he was doing. Based on Weigel's personal experience, persistent or escalating nervousness is an indicator that the person might be involved in illegal activity." 263 Kan. at 735.

In affirming the suppression order, the court held that DeMarco's nervousness alone did not provide sufficient reasonable suspicion of illegal activity. 263 Kan. at 738. We conclude, under the reasoning and holding in *DeMarco,* Boykins' nervousness considered in isolation did not provide reasonable suspicion of criminal activity warranting extension of the duration of the traffic stop.

Thus, we come to the ultimate legal question to be answered: Does "mere propinquity" and a high state of nervousness by Boykins when pulled over for a traffic violation, provide reasonable suspicion of criminal activity? Under the undisputed facts of this case, we answer "no." This is not a case where two subjective observations can be added together to make an objective observation that will pass muster under the Fourth Amendment. The record is devoid of any evidence that Detective Miller saw Boykins do anything that was suspicious. There is no evidence regarding the activities of the female passenger or her relationship with Boykins. There is no evidence Boykins was acquainted with anyone in the

house. His conduct was certainly lawful. Adding lawful conduct under no suspicious circumstances together with his nervousness at the traffic stop is not an articulation of reasonable suspicion of criminal activity, it only produces a subjective hunch that may or may not ultimately prove correct. We conclude Boykins' rights under the Fourth Amendment were violated as a matter of law, and the remaining evidence, if any, is insufficient to support the underlying conviction. Accordingly, Boykins' conviction is reversed, and his sentence is to be vacated.

Our decision on the search and seizure issue renders moot the *Apprendi* sentencing issue.

Reversed and remanded.