(138 P.3d 771)
No. 94,613

STATE OF KANSAS, *Appellee,* v. CURT DANIEL VANDEVELDE, *Appellant.*

Opinion filed July 21, 2006.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Amy M. Memmer*, assistant district attorney, *Robert D. Hecht*, district attorney, and *Phill Kline,* attorney general, for appellee.

Before MALONE, P.J., GREEN, J., and BUKATY, S.J.

GREEN, J.: Curt Vandevelde appeals from his convictions for possession of cocaine in violation of K.S.A. 65-4160(a) and failure to use a turn signal in violation of K.S.A. 8-1548(b). Vandevelde's sole argument on appeal is that the trial court erred in denying his motion to suppress the evidence found during a search of his truck. The trial court determined that the search of Vandevelde's truck was a valid search incident to a lawful arrest. We disagree with the

trial court's ruling. K.S.A. 22-2501 sets forth the following circumstances under which an officer may conduct a valid search incident to a lawful arrest in Kansas: (1) to protect the officer from attack; (2) to prevent the person from escaping; or (3) to discover the fruits, instrumentalities, or evidence of a crime. Because the search of Vandevelde's truck did not fit within any of the circumstances under K.S.A. 22-2501, it was not justified as a valid search incident to a lawful arrest.

Nevertheless, the State contends that the evidence should not be suppressed because there were exigent circumstances and the officers had probable cause to believe that Vandevelde had purchased and possessed drugs. We determine that the facts known to the officers before the search would not give rise to probable cause to believe that Vandevelde had purchased and possessed drugs. The State also argues that the evidence would have been inevitably discovered during an inventory search of Vandevelde's truck. Nevertheless, the evidence presented at the suppression hearing indicated that Vandevelde's truck was never in lawful police custody and, therefore, was not subject to a lawful inventory search. Based on the evidence presented at the suppression hearing, we determine that the State failed to show that the search was valid. Accordingly, we reverse and remand with directions that the evidence seized in the unlawful search should be suppressed.

Vandevelde's possession conviction in this case stems from events that occurred on the afternoon of August 5, 2003. Topeka Police Officers Jerry Monasmith, Mark Hilt, and one other officer were assigned to the bicycle unit and were watching an apartment complex in the 600 block of southwest Taylor Street on a narcotics complaint. Monasmith characterized the area as a high crime area with gang activity, violent crimes, and open air drug markets. Monasmith explained that an open air drug market is a residential area where individuals can stand outside and purchase drugs. Hilt testified that the narcotics unit had recently executed search warrants at the apartment complex and that two assault rifles and two handguns had been taken during a search.

At approximately 4:30 that afternoon, Monasmith saw Vandevelde go inside the apartment complex and then return to his truck

a short time later. Vandevelde then drove north on Taylor. Monasmith testified that individuals commonly spend a short period of time at a location where they are purchasing narcotics. The officers became suspicious of Vandevelde because he spent a short period of time inside the apartment complex where they had seen narcotics being sold.

As Vandevelde was leaving the area, the officers followed him and saw him make a right turn without using a turn signal. The officers caught up with Vandevelde within approximately 4 blocks and stopped him for the traffic infraction. Hilt parked his bicycle in front of Vandevelde's truck. As Hilt was looking at Vandevelde through the front windshield, Hilt saw Vandevelde move his right hand towards the middle of the truck and reach down quickly as if he were trying to retrieve an item. Similarly, Monasmith testified that he saw Vandevelde reach towards the middle of the seat as if he were trying to reach for an item or conceal something.

When Hilt saw Vandevelde make such movements, Hilt started giving Vandevelde verbal commands to place his hands up so that the officers could see them. Hilt testified that he yelled four times quickly, "Put your hands up." Hilt testified that he then drew his gun because he was concerned that Vandevelde could be reaching for a weapon. Hilt pointed out that Vandevelde had been at the apartment complex where officers had retrieved weapons during an earlier search warrant and that there were many gunshot calls and violent acts that had occurred in that area.

According to Hilt, Vandevelde did not immediately comply with the officers' commands. After the fourth command for Vandevelde to put his hands up and after Hilt had drawn his gun, Vandevelde placed his hands on the steering wheel. Hilt then ordered Vandevelde out of his truck to arrest him for "city interference" because Vandevelde had failed to comply with the officers' commands to raise his hands. Vandevelde was placed in a prone position on the ground and handcuffed. Vandevelde was then handed off to another officer who was standing at the back of the truck.

After Vandevelde was arrested and in the custody of the other officer, Hilt returned to the truck and searched the area where

Vandevelde had been reaching inside the truck. Hilt found a glass cylinder pipe containing a white rock substance which Hilt identified as rock cocaine. Hilt testified that Vandevelde was searched at the same time that the truck was being searched. On the other hand, Monasmith indicated that before the truck was searched, Vandevelde was searched and placed in the back of a police car.

Vandevelde had no identification with him. The officers discovered that there were two arrest warrants outstanding for Vandevelde in Osage County and Jackson County. Both Monasmith and Hilt indicated that Vandevelde would have been arrested on the outstanding arrest warrants, regardless of whether anything was found in the truck.

Hilt testified that it was standard procedure for officers to remove valuable personal items from a person's automobile when that person is arrested. When Hilt was questioned about whether he would do an inventory search if the arrested person told him that the automobile was a company truck and would be picked up by the employer, Hilt responded that he would ask the arrested person if there was anything valuable that he or she would want secured. Hilt acknowledged that he never had such a conversation with Vandevelde. Moreover, Hilt indicated that there did not appear to be anything of value in Vandevelde's truck.

Although Hilt asked Vandevelde what he wanted done with his truck, Hilt could not remember Vandevelde's response. Hilt remembered that they did not tow Vandevelde's truck but instead left it at the scene. According to Monasmith, cars were allowed to park on either side of the street in the area where Vandevelde was stopped. Vandevelde testified that he told the officer in the patrol car that his father would come and get the truck. When Vandevelde got to the police station, he called his father to get the truck. Vandevelde's father came to the police station to pick up the key to the truck.

Vandevelde was charged with possession of cocaine and failure to use a turn signal. Before trial, Vandevelde moved to suppress the evidence seized from his truck. Vandevelde argued that the search could not be justified as either a protective search or a search incident to a lawful arrest. At the hearing on his motion to

suppress, Vandevelde acknowledged that the pipe and the cocaine were his. Nevertheless, he testified that he had not obtained the cocaine when the officers saw him at the apartment complex. Instead, he had stopped at the apartment complex to try to find someone that owed him money. Vandevelde testified that he never went inside the apartment building. Furthermore, Vandevelde testified that when the officers stopped him, he never reached below the seat to hide anything. According to Vandevelde, he was trying to put his truck into neutral and engage the emergency brake when the officers stopped him. In a written memorandum decision, the trial court denied Vandevelde's motion to suppress. The trial court found that the search of Vandevelde's truck was a valid search incident to a lawful arrest.

At a later bench trial, the trial court found Vandevelde guilty of possession of cocaine and failure to use a turn signal. Vandevelde was sentenced to a suspended sentence of 20 months in prison and ordered to complete 18 months of probation and mandatory drug treatment.

*Motion to Suppress*

On appeal, Vandevelde argues that the trial court erred in denying his motion to suppress the evidence seized during the search of his truck. In reviewing the trial court's grant or denial of a motion to suppress evidence, an appellate court determines whether the factual underpinnings of the decision are supported by substantial competent evidence. The ultimate legal conclusions drawn from those facts is a question of law which is reviewed by a de novo standard. An appellate court does not reweigh the evidence. *State v. Green*, 32 Kan. App. 2d 789, 792, 89 P.3d 940, *rev. denied* 278 Kan. 849 (2004). The State bears the burden of proof for a suppression motion. It must prove to the trial court the lawfulness of the search and seizure. *State v. Shelton*, 278 Kan. 287, 292, 93 P.3d 1200 (2004).

The Fourth Amendment to the United States Constitution prohibits all unreasonable searches and seizures. Searches conducted without a valid search warrant are per se unreasonable unless the circumstances of the search fall within a specifically established and

well-delineated exception to the search warrant requirement. *State v. Boyd*, 275 Kan. 271, 273, 64 P.3d 419 (2003) The generally recognized exceptions to the search warrant requirement include: (1) consent; (2) search incident to a lawful arrest; (3) stop and frisk; (4) probable cause to search with exigent circumstances, an example of which is hot pursuit; (5) the emergency doctrine; (6) an inventory search; (7) plain view; and (8) an administrative search of a closely regulated business. *State v. Conn*, 278 Kan. 387, 390-91, 99 P.3d 1108 (2004).

In denying Vandevelde's motion to suppress, the trial court found that the search of Vandevelde's truck was a valid search incident to a lawful arrest. In making this determination, the trial court found that the officers lawfully arrested Vandevelde for interference with a city law enforcement officer under the Code of the City of Topeka, Kansas (Topeka Code) § 54-73 (1995) and for not obeying a lawful police order under Topeka Code § 54-71 (1995).

Initially, we point out that Vandevelde does not challenge the stop of his truck. The trial court found that Vandevelde was stopped by Officer Hilt for failure to use a turn signal when making a right turn. This finding is supported by Officer Hilt's testimony at the suppression hearing. We determine that the initial stop for the traffic violation was valid.

Nevertheless, Vandevelde contends that the evidence produced at the suppression hearing failed to establish that he violated the Topeka Code. Vandevelde maintains that he did not violate the Topeka Code because he never "willfully failed" or "refused to comply" with the officer's orders as required by Topeka Code § 54-71. Topeka Code § 54-71 states: "It shall be unlawful for any person to *willfully fail* or *refuse to comply* with any lawful order or direction of any police officer or other peace officer in the discharge of his duties within the corporate limits of the city." (Emphasis added.)

Based on the evidence produced at the suppression hearing, a reasonable inference could be made that Vandevelde willfully failed or refused to comply with Hilt's initial commands to show his hands. Here, both Hilt and Monasmith testified that after they

stopped Vandevelde, he appeared to reach for something in the middle area of his truck. The officers yelled to Vandevelde to show his hands. Vandevelde did not immediately comply with the officers' commands. It was not until after the fourth command for Vandevelde to show his hands and after Hilt had drawn his gun that Vandevelde put his hands on the steering wheel. This evidence was sufficient to establish that Vandevelde "willfully failed" or "refused to comply" with Hilt's orders.

Moreover, Vandevelde's argument ignores the language of Topeka Code § 54-73, the other code section under which the trial court found that Vandevelde was lawfully arrested. At the suppression hearing, Hilt testified that Vandevelde was arrested for "city interference" in violation of Topeka Code § 54-73 by failing to comply with the orders to show his hands. Topeka Code § 54-73 states in relevant part: "It shall be unlawful for any person to knowingly or unknowingly interfere with any city officer or employee in the performance of duty for the city." This code section does not require that the individual "wilfully fail or refuse to comply" with a police officer's lawful order. The evidence presented at the suppression hearing was sufficient to show that Vandevelde "knowingly or unknowingly" interfered with the Topeka police officers, who are Topeka employees, in the performance of their duties for Topeka. Therefore, the trial court properly determined that Vandevelde had violated Topeka Code § 54-73.

As pointed out by the State, failure to comply with a lawful police order under Topeka Code § 54-71 and interference with a city employee under Topeka Code § 54-73 are classified as misdemeanors. See Topeka Code § 54-2 (1995). K.S.A. 2005 Supp. 22-2401(d) allows a law enforcement officer to arrest an individual for "[a]ny crime, except a traffic infraction or a cigarette or tobacco infraction, [that] has been or is being committed by the person in the officer's view." We agree with the trial court that the officers could lawfully arrest Vandevelde for interference with a city law enforcement officer.

*Search Incident to Arrest*

Our review now turns to the trial court's determination that the search of Vandevelde's truck came within the search incident to a

lawful arrest exception to the Fourth Amendment search warrant requirement. The State cites *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, *reh. denied* 453 U.S. 950 (1981), for the proposition that an officer who has lawfully arrested a car's occupant may search the passenger compartment of the car and examine the contents of any containers found within that area. Nevertheless, the State recognizes that Kansas law is clear that one of the three circumstances outlined in K.S.A. 22-2501 must be met for a valid search incident to a lawful arrest.

In *Conn,* 278 Kan. 387, Syl. ¶ 1, our Supreme Court made clear that "[a] search which is purely a search incident to arrest may only be conducted for the purposes listed in K.S.A. 22-2501: officer protection; escape prevention; and discovery of the fruits, instrumentalities, or evidence of the crime." Our Supreme Court in *Conn* noted that in *State v. Anderson,* 259 Kan. 16, 22, 910 P.2d 180 (1996), it had previously "rejected the view that case law applying the Fourth Amendment, in particular *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, *reh. denied* 453 U.S. 950 (1981), meant that a search of an automobile could automatically be conducted when an occupant was arrested." 278 Kan. at 391. In *Anderson,* our Supreme Court stated that Kansas has "a statute that sets forth the permissible circumstances and purposes under which a search incident to arrest can be made. [K.S.A. 22-2501] may possibly be more restrictive than prevailing case law on the Fourth Amendment would permit, but this does not alter the plain language of the statute." 259 Kan. at 22.

Thus, our analysis of whether the officers conducted a lawful search incident to arrest is limited to the circumstances set forth in K.S.A. 22-2501:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of
"(a) Protecting the officer from attack;
"(b) Preventing the person from escaping; or
"(c) Discovering the fruits, instrumentalities, or evidence of the crime."

The trial court failed to determine whether any of the circumstances under K.S.A. 22-2501 were present here to justify a search

incident to a lawful arrest. Instead, the trial court relied on the following six factors outlined in *State v. Tygart*, 215 Kan. 409, Syl. ¶ 2, 524 P.2d 753 (1974):

"The critical circumstances to be considered by a trial court in ruling on a motion to suppress evidence and in determining the reasonableness of the scope of a search of a motor vehicle incident to a valid arrest are: (1) Proximity of the vehicle to the place of arrest; (2) the probability that the vehicle contains seizable items related to the crime; (3) the amount of time which has elapsed between the arrest and the search; (4) the recent departure of the arrestee from the vehicle; (5) the fact that the vehicle had been employed in some way in connection with the crime; and (6) the character of the place of arrest, *i.e.*, public street, business premises or private home. Other factors may bear upon the question and no single factor, standing alone, is decisive in a given case for each may have a significant effect on the court's determination of whether the search was a reasonable one."

Although these factors are helpful when considering the reasonableness of the scope of the search, our Supreme Court has made clear that a search incident to a lawful arrest may be conducted only for one of the three purposes under K.S.A. 22-2501. See *Conn*, 278 Kan. 387, Syl. ¶ 1. Therefore, it must first be determined in this case whether the search of Vandevelde's truck was done for one of the purposes under K.S.A. 22-2501: to protect an officer from attack, to prevent Vandevelde from escaping, or to discover the fruits, instrumentalities, or evidence of the crime of interference with a city law enforcement officer.

The State maintains that the evidence presented at the suppression hearing clearly established that the officers searched Vandevelde's truck to ensure there were no weapons and to protect the officers from attack. When Vandevelde's truck was searched, Vandevelde had been arrested, was in handcuffs, and was in the custody of an officer. There were no other passengers in the car. Vandevelde had not resisted arrest. Three officers were at the scene, and a sergeant later arrived in a patrol car.

Although Hilt testified that Vandevelde was being searched when the truck was being searched, the trial court found that Vandevelde was searched immediately before the search of the truck. Specifically, in its written memorandum decision and order, the trial court found the following:

"8. Officer Hilt searched [Vandevelde] and indicated to him that he was under arrest for city interference charges. No weapons or contraband were found during the search of [Vandevelde].

"9. The officers *then* searched the area of the truck where [Vandevelde] had been reaching and discovered a glass pipe (crack pipe) with burn marks on each end and a small white rock, suspected to be crack cocaine." (Emphasis added.)

In applying the law relating to a search incident to a lawful arrest to the facts of this case, the trial court further stated: "After being pulled from the car, [Vandevelde] was handcuffed, placed under arrest for city interference charges, and searched. Immediately thereafter, the officers searched the vehicle . . . ."

The trial court's findings that Vandevelde was handcuffed, placed under arrest, and searched before the truck was searched are supported by Monasmith's testimony. Although the trial court never found whether Vandevelde was actually placed in a patrol car, the record supports a finding that Vandevelde was in the back of a patrol car when his truck was searched. At trial, Vandevelde testified as follows: "[The officers] handcuffed me and put me in the back of a cop car, and I watched them search the truck." The State never challenged Vandevelde's testimony by cross-examining him on whether he was in the back of a police car when his truck was searched. Early in his testimony, Monasmith had indicated that a police sergeant brought a police car to the scene. Specifically, Monasmith testified as follows:

"Q. [Vandevelde's attorney:] There were a total of three bike officers patrolling together; is that right?

"A. [Monasmith:] Yes, Officer Whisman was with us as well, and then—

"Q. [Vandevelde's attorney:] Go ahead.

"A. [Monasmith:] —and then Sergeant Roy arrived a short time later. He was in the car, and actually, later transported."

When questioned by Vandevelde's attorney about Vandevelde's situation when the truck was searched, Monasmith testified:

"Q. [Vandevelde's attorney:] Now, at the time that the cab of the truck was searched, Mr. Vandevelde was in handcuffs; correct?

"A. [Monasmith:] Yes, sir.

"Q. [Vandevelde's attorney:] He was in a squad car?

"A. [Monasmith:] *He was handcuffed, he was searched, and, yes, he was placed into the back seat of a police vehicle.*

"Q. [Vandevelde's attorney:] And he was already under arrest at that point?

"A. [Monasmith:] Yes, he was." (Emphasis added.)

Although the State questioned Monasmith on redirect examination after the above testimony, it never challenged his testimony that Vandevelde was in the back of a police car when the truck was searched. Moreover, Hilt's testimony never touched on Vandevelde's presence in the police car. Therefore, the evidence was apparently undisputed that Vandevelde was in the back of a police car when the truck was searched. See *International Motor Rebuilding Co. v. United Motor Exchange, Inc.*, 193 Kan. 497, 501, 393 P.2d 992 (1964) (where there is no dispute in testimony and it all points to one conclusion, the question is one of law and not of fact); see also *Cain v. Grosshans & Petersen, Inc.*, 192 Kan. 474, Syl. ¶ 3, 389 P.2d 839 (1964) (The trial court may not make a finding contrary to undisputed evidence.).

We are unable to see how Vandevelde who was handcuffed, in the back seat of a patrol car, and in the custody of an officer could gain access to his truck. At that point, there was no fear that Vandevelde would be able to retrieve a weapon from his truck and attack the officers because nothing in the truck was in Vandevelde's immediate presence.

In *Anderson*, 259 Kan. 16, Officer Lee Williams pulled over a Mercedes after he witnessed the driver make an unsafe lane change and nearly collide with a van. Huffman was driving the car, and Anderson was a passenger. An infant was asleep in the back seat. During a records check, Williams discovered that Huffman had a suspended driver's license and an outstanding arrest warrant for operating a vehicle with no child restraint. Nothing was discovered during a records check on Anderson. Anderson identified himself as the owner of the Mercedes. Williams arrested and handcuffed Huffman and placed her in the back seat of a police car from which she could not exit. Williams did not search Huffman. Deciding to search the Mercedes, Williams and his back-up officer approached the Mercedes. Anderson was asked to step outside of the car so that it could be searched. During the search, Williams discovered

a glass cylinder pipe that contained residue. Williams then searched the trunk of the Mercedes and discovered items that he recognized as ingredients used in a methamphetamine laboratory. Anderson was arrested. A motel room key was later discovered during the booking process. During a search of the motel room, officers discovered various illicit drug-related items.

Anderson was charged with various drug offenses. The trial court determined that the search was improper and suppressed the evidence. This court affirmed the trial court's decision. Our Supreme Court granted the State's petition for review and affirmed this court's and the trial court's decision. 259 Kan. at 16-17, 24. Holding that the search could not be justified as a search incident to a lawful arrest under K.S.A. 22-2501, our Supreme Court stated that Williams had testified that neither Anderson nor Huffman had been hostile and that they had cooperated with his requests. Our Supreme Court noted that Williams had stated that he was not afraid that he would be attacked, that Anderson or Huffman were armed, or that weapon might be in the Mercedes. Our Supreme Court further noted that Williams' actions were consistent with his lack of concern for his safety. Furthermore, in recognizing that Huffman had been arrested and was in the back seat of a police car from which she could not exit, our Supreme Court stated:

"At the time of the search of the vehicle, the woman arrested was in handcuffs in the back seat of a police car. There was no way she could leave the back seat on her own initiative. The woman had been arrested for driving on a suspended license and on the 'no child restraint' traffic warrant. The searching officer did not claim he was looking for 'fruits, instrumentalities, or evidence' of either crime or for an evidence relative to the unsafe driving he had observed. The officer was looking for illicit drugs and drug-related items when he searched the vehicle." 259 Kan. at 19.

Our Supreme Court concluded that the trial court correctly determined that the search was not conducted for any of the purposes under K.S.A. 22-2501. 259 Kan. at 19.

Here, similar to *Anderson,* Vandevelde had been removed from the truck, was handcuffed, arrested, and placed in the back of the police car. Different from the facts of *Anderson,* Vandevelde was searched before the truck was searched. No weapons were found

on his person. Moreover, the record indicates that there were three bicycle officers and a sergeant at the scene during the search of Vandevelde's truck. Although there was testimony from Hilt that he became suspicious that Vandevelde was reaching for a weapon in his truck when the initial stop occurred, the possibility of attack was removed once Vandevelde was taken from his truck, handcuffed, arrested, searched, and placed in the back of the police car.

The State fails to make any argument that the search could be justified under K.S.A. 22-2501(b) to prevent Vandevelde from escaping or under K.S.A. 22-2501(c) to discover the fruits, instrumentalities, or evidence of the crime of interference with a city law enforcement officer. We are unable to determine that the search of Vandevelde's truck could be justified under either of those circumstances. As discussed above, the evidence failed to show that Vandevelde posed a risk of gaining access to his truck. Moreover, the search of Vandevelde's truck could not produce any "fruits, instrumentalities, or evidence" of Vandevelde's crime of failing to comply with Hilt's oral commands to show his hands. The only evidence that could support Vandevelde's crime was testimony that Hilt had orally ordered Vandevelde to put his hands up and that Vandevelde had not complied with Hilt's oral order. No evidence was going to be discovered in Vandevelde's truck concerning the crime of interference with a city law enforcement officer for which he was arrested.

Because the search of Vandevelde's truck was not reasonably conducted for one of the purposes under K.S.A. 22-2501, it cannot be justified as a valid search incident to a lawful arrest.

### Probable Cause With Exigent Circumstances

Nevertheless, the State argues that even if the search of Vandevelde's truck was not a valid search incident to a lawful arrest, Vandevelde's motion to suppress should still be denied because probable cause with exigent circumstances existed.

"The search of an automobile may be justified on the basis of probable cause that a crime has been committed even though it is not justified as a search incident to arrest. [Citation omitted.]" *State v. Conn*, 278 Kan. 387, 394, 99 P.3d 1108 (2004). Before a war-

rantless search can be conducted, exigent circumstances must also exist which would justify an immediate search. A commonly applied exigent circumstance is the "automobile exception" that allows officers to search an automobile without a warrant when there is probable cause to justify a search. *Conn*, 278 Kan. at 395.

Quoting *State v. Abbott*, 277 Kan. 161, Syl. ¶¶ 2, 3, 83 P.3d 794 (2004), our Supreme Court in *State v. Ramirez*, 278 Kan. 402, 406, 100 P.3d 94 (2004), defined probable cause as follows:

> " 'Probable cause is the reasonable belief that a specific crime has been committed and that the defendant committed the crime. Probable cause exists where the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.
>
> " 'When determining whether probable cause exists, an appellate court considers the totality of the circumstances, including all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt.' "

The State contends that based upon the officers' observations of Vandevelde, the officers had probable cause to believe that Vandevelde had purchased and possessed drugs. The State points to the following facts known to the officers before searching Vandevelde's truck: (1) Vandevelde had spent a short period of time inside an apartment complex where drug transactions commonly take place and which was in a high crime area; (2) upon being stopped, Vandevelde reached down towards the middle of his seat as if he were trying to retrieve or conceal something; and (3) Vandevelde did not immediately comply with the officers' oral commands to show his hands.

Nevertheless, when looking at the totality of the circumstances, we determine that the information known to the officers did not rise to the level of probable cause to believe that Vandevelde had purchased and possessed drugs. At the suppression hearing, Officer Monasmith testified that Vandevelde had gone inside the apartment complex but did not identify a particular apartment that Vandevelde had visited. The officers' testimony failed to indicate whether Vandevelde had visited the apartment where the previous

search warrant had been executed or whether he had gone to a different apartment where no suspicious activity had previously occurred. Moreover, although Hilt testified that guns had been recovered during the previous search warrant, he never indicated that officers had seized drugs. Neither Hilt nor Monasmith testified about any previous arrests for drug activity at the apartment building. The officers never saw any sort of transaction take place between Vandevelde and another person such as the delivery or passing of an envelope or baggie and an exchange of money. See *People v. McRay*, 51 N.Y.2d 594, 602-05, 435 N.Y.S.2d 679, 416 N.E.2d 1015 (1980) (inference of probable cause is established when experienced narcotics officer sees delivery of glassine envelopes in an area known for narcotics activity).

Moreover, once Vandevelde was stopped, the officers never saw anything in the truck which would lead them to believe that Vandevelde had purchased and possessed drugs. The evidence does not show that drugs or drug paraphernalia were found in plain view in the truck. The State does not and has not argued that the pipe and cocaine were found in plain view. While Vandevelde's actions of quickly reaching towards the middle of the seat may have further aroused the officers' suspicions and led them to ask Vandevelde some questions about his presence at the apartment building, we are unable to determine that Vandevelde's behavior would have elevated the officers' suspicions to probable cause. "Evidence of probable cause need not reach the level to prove guilt beyond a reasonable doubt, but it must constitute more than mere suspicion." *State v. Mayberry*, 248 Kan. 369, 376, 807 P.2d 86 (1991).

In *Ramirez*, 278 Kan. at 408, our Supreme Court quoted 2 LaFave, Search and Seizure § 3.6(b), pp. 299-301, and 2004 Pocket Part, pp. 47-49 (1996), which discusses whether possession of certain kinds of envelopes or packages constitutes probable cause:

" '[T]he observation of a person in possession of a certain kind of envelope or other packaging which on other occasions involving other persons has been found to conceal narcotics does not, standing alone, constitute probable cause. It has even been held that the viewing of a passing of such a container from one person to another is not enough, though it would seem that little more than that should be necessary. Certainly if money is passed in exchange there are then grounds to

arrest, and the small gap can also be filled by "furtive or evasive behavior," prior information from an informant, or the fact that the locale "has developed a reputation as a drug marketplace." ' "

Thus, even when an officer sees an individual in possession of a package that is commonly used to conceal drugs, there must be some other evidence such as the passing of money to establish probable cause. Here, no officer even saw Vandevelde with any sort of suspicious envelope or package when he left the apartment.

In *State v. Boykins*, 34 Kan. App. 2d 144, 118 P.3d 1287 (2005), this court reversed the trial court's denial of the defendant's motion to suppress evidence. There, officers were watching a residence for suspected drug activity when they saw a car driven by the defendant stop in front of the home. A female passenger got out of the car and went inside the home. Before she went inside, the passenger took something out of her pocket and handed it to the defendant. As the defendant drove away from the residence, an officer followed him and saw him turn without using a turn signal. Another officer who was also involved in the residence surveillance stopped the defendant and noticed that he was exhibiting nervous behavior. The officer asked the defendant to step out of the car and began questioning him about whether he had a weapon. When the officer asked the defendant if he possessed any drugs, the defendant looked at his shirt pocket, paused, looked back at the officer, and responded yes. The officer discovered a baggie that contained cocaine in the defendant's shirt pocket. After the defendant was arrested, two more baggies containing cocaine were found in the defendant's car during an inventory search.

The defendant in *Boykins* moved to suppress the evidence, arguing that there had been an unreasonable detention under the Fourth Amendment to the United States Constitution. The trial court found that the officers had reasonable suspicion to investigate a possible drug violation and denied the defendant's motion to suppress. On appeal, this court held that the defendant's "mere propinquity" to others and his nervous behavior did not provide reasonable suspicion of criminal activity. 34 Kan. App. 2d at 147. Noting that the officers' observations only produced a subjective

hunch that may or may not ultimately prove correct, this court stated:

"This is not a case where two subjective observations can be added together to make an objective observation that will pass muster under the Fourth Amendment. The record is devoid of any evidence that Detective Miller saw Boykins do anything that was suspicious. There is no evidence regarding the activities of the female passenger or her relationship with Boykins. There is no evidence Boykins was acquainted with anyone in the house. His conduct was certainly lawful. Adding lawful conduct under no suspicious circumstances together with his nervousness at the traffic stop is not an articulation of reasonable suspicion of criminal activity, it only produces a subjective hunch that may or may not ultimately prove correct. We conclude Boykins' rights under the Fourth Amendment were violated as a matter of law, and the remaining evidence, if any, is insufficient to support the underlying conviction." 34 Kan. App. 2d at 148-49.

Here, similar to *Boykins*, the officers never saw Vandevelde do anything that was suspicious of drug activity. As discussed above, there was no evidence that they saw Vandevelde enter an apartment where drug activity took place. Moreover, unlike *Boykins*, the officers never saw anything exchanged between another individual and Vandevelde. In fact, the officers never saw Vandevelde in possession of anything suspicious. When Vandevelde was arrested, no drugs or contraband were found on his person. There was no evidence that supported probable cause for the police to believe that drugs or contraband would be found in Vandevelde's car. Therefore, we reject the State's argument that Vandevelde's motion to suppress should be denied because there existed probable cause with exigent circumstances.

*Inevitable Discovery*

The State also contends that Vandevelde's motion to suppress should be denied because the evidence would be admissible under the inevitable discovery doctrine. "Under the inevitable discovery doctrine, evidence will not be suppressed, despite a constitutional violation in the way it was discovered or obtained, if the same evidence could have come to the attention of law enforcement independent of the violation. [Citation omitted.]" *State v. Huff*, 278 Kan. 214, 221, 92 P.3d 604 (2004).

The State maintains that the officers would have inevitably discovered the pipe and cocaine during the inventory search that the officers conducted before leaving the truck on the side of the road. Our Supreme Court in *State v. Teeter*, 249 Kan. 548, Syl. ¶ 2, 819 P.2d 651 (1991), recognized that an inventory search is not valid unless the police have lawful custody of the vehicle:

"An inventory search of a vehicle cannot be valid unless the police first obtain lawful possession of the vehicle. The police must have authorization by statute or ordinance to lawfully impound a vehicle. If the police do not have express authority to impound a vehicle, they may still take lawful custody of a vehicle when there are 'reasonable grounds' for impoundment."

Thus, in order to conduct a valid inventory search, the police must have first taken lawful custody of the vehicle. The police may take lawful custody of the vehicle when they have express authority to impound the vehicle or when then there are reasonable grounds for impoundment.

Here, the evidence indicates that there were never reasonable grounds for impoundment. Quoting *State v. Boster*, 217 Kan. 618, 624, 539 P.2d 294 (1975), *overruled on other grounds State v. Fortune*, 236 Kan. 248, 689 P.2d 1196 (1984), our Supreme Court in *Teeter*, 249 Kan. at 552, set forth six examples where reasonable grounds for impoundment exist:

" 'the necessity for removing (1) an unattended-to car illegally parked or otherwise illegally obstructing traffic; (2) an unattended-to car from the scene of an accident when the driver is physically or mentally incapable of deciding upon steps to be taken to deal with his property, as in the case of the intoxicated, mentally incapacitated or seriously injured driver; (3) a car that has been stolen or used in the commission of a crime when its retention as evidence is necessary; (4) an abandoned car; (5) a car so mechanically defective as to be a menace to others using the public highway; [and] (6) a car impoundable pursuant to ordinance or statute which provides therefor as in the case of forfeiture. . . .' "

Similarly, in *Fortune*, 236 Kan. at 257, our Supreme Court explained when impoundment would be proper:

"If the owner, operator or person in charge of the vehicle is readily available to make a determination as to the disposition of the vehicle then he may do so. If the person responsible for the vehicle desires that the vehicle be left lawfully parked upon the streets or that it be turned over to some other person's custody, then, absent some other lawful reason for impounding the vehicle, his or her

wishes must be followed. Only when a vehicle is found illegally parked and un-
attended, or where the person responsible for its possession is unable or unwilling
to instruct the arresting officers as to the vehicle's disposition or some other legal
reason justifying impoundment exists should the officers assume control over the
vehicle."

Here, the evidence established that Vandevelde's truck was ap-
parently lawfully parked in the area where he was stopped. More-
over, Vandevelde told the officers that his father could pick up the
truck. As a result, impoundment of Vandevelde's car could not be
justified under the first factor set forth in *Teeter*. Furthermore, the
evidence failed to show that any of the other factors from *Teeter*
were present here.

Because there were never reasonable grounds for impound-
ment, we determine that the evidence discovered during the search
of Vandevelde's truck was inadmissible under the inevitable dis-
covery doctrine. "If the impoundment of the vehicle is unreason-
able and, therefore, unlawful, the inventory search following im-
poundment is unlawful. All evidence obtained through an unlawful
search is inadmissible and must be suppressed. [Citation omitted.]"
*State v. Canaan*, 265 Kan. 835, 844, 964 P.2d 681 (1998).

*Protective Sweep*

In his brief, Vandevelde argues that the search of his truck could
not be justified as a "protective sweep" because he was arrested
and in police custody when the search occurred. Vandevelde dis-
cusses and distinguishes *Michigan v. Long*, 463 U.S. 1032, 77 L.
Ed. 2d 1201, 103 S. Ct. 3469 (1983), where the United States
Supreme Court determined that the protective search of the pas-
senger compartment of the defendant's automobile during an in-
vestigatory stop was reasonable.

Nevertheless, the State concedes that *Long* is inapplicable. The
State further acknowledges that it is unnecessary to analyze the
search of Vandevelde's truck as a protective sweep because Van-
develde had been placed under a lawful custodial arrest before the
search occurred. We agree. Because Vandevelde was under arrest
when his truck was searched, the "protective sweep" analysis under
*Long* is inapplicable here. Furthermore, as discussed above, Van-

develde posed no reasonable risk of gaining access to any weapons that he might have had in his truck.

Because the State failed to establish that a lawful search occurred in this case, we determine that Vandevelde's motion to suppress should have been granted.

Reversed and remanded with directions.