No. 101,052

STATE OF KANSAS, *Appellee*, v. ROBERT DENNIS, Appellant.

(300 P.3d 81)

Opinion filed May 3, 2013.

*Michelle Davis*, of Kansas Appellate Defender Office, was on the briefs for the appellant.

*Joseph M. Penney* and *James R. Watts*, assistant county attorneys, *Steve Six*, former attorney general, and *Derek Schmidt*, attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: The State seeks review of a divided Court of Appeals decision suppressing drug evidence obtained during a vehicle search conducted incident to the driver's arrest. That search occurred prior to *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d. 485 (2009), and both parties agree *Gant* rendered the search illegal. But the State argues suppression is unnecessary and contrary to this court's decision in *State v. Daniel*, 291 Kan. 490, 242 P.3d 1186 (2010), *cert. denied* 131 S. Ct. 2114 (2011). In *Daniel*, we applied a good-faith exception to the exclusionary rule for pre-*Gant* searches conducted under the then-existing authority of K.S.A. 22-2501(c) (search incident to arrest for evidence of a crime). The panel majority refused to apply *Daniel*, in part, because the officer did not testify that he relied on K.S.A. 22-2501(c) to conduct the search. *State v. Dennis*, No. 101,052, 2011 WL 425987, at *3 (Kan. App. 2011) (unpublished opinion). We granted review.

The panel majority erred when it found *Daniel* distinguishable. We hold that it was unnecessary for the officer to specifically articulate K.S.A. 22-2501 as authority for the search because application of a good-faith exception to the exclusionary rule is not governed by a subjective inquiry. The question is whether an objectively reasonable officer could rely on K.S.A. 22-2501. We agree with the State that the good-faith exception applies. We reverse and remand this case to the Court of Appeals for resolution of the remaining issues unaddressed in the panel's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 16, 2007, Officer Matthew Meckel was parked in his patrol car, watching an apartment complex he believed was

associated with illegal drug use. While doing so, Meckel learned that a parked vehicle at the complex belonged to Robert Dennis, whose driver's license was suspended. Meckel later observed the vehicle leave the complex and stopped it for making an illegal turn at a nearby intersection. As the vehicle pulled over, Meckel saw Dennis making movements towards the center console. Dennis exited his vehicle, shut and locked the door behind him, and faced the officer in what Meckel described as an "aggressive" or "offensive" manner.

Meckel said he approached Dennis and patted him down for officer safety, during which Meckel saw what appeared to be an open beer bottle between the front seats of Dennis' car. Meckel testified he asked Dennis if there was an open container in the vehicle and Dennis replied, " 'Yes.' " The officer arrested Dennis for transporting an open container, handcuffed him, and sat him down on a nearby curb. Meckel then searched the vehicle incident to the arrest.

The officer testified he observed "a Taco Tico or Taco Bell bag with suspicious items hanging out the top" on the floorboard behind the driver's seat while retrieving the beer bottle. One item in the bag was a stained or discolored rubber glove. Meckel said he looked inside and saw a peeled lithium battery, which he knew from his training to be associated with manufacturing methamphetamine. On the backseat, Meckel said he saw a camp stove and a microwave oven, as well as a funnel, some tubing, a glass jar with powder residue, and a number of plastic bags tied in knots. Meckel believed several of these items were used to manufacture methamphetamine. He then contacted his sergeant to assist with the search, which ultimately revealed additional drug paraphernalia and manufacturing equipment. Some items tested positive for methamphetamine. Dennis was charged with one count of manufacture of methamphetamine, one count of possession of ephedrine with intent to use as a precursor, one count of possession of methamphetamine, and one count of possession of drug paraphernalia with intent to manufacture.

Before trial, Dennis moved to suppress the items found in his vehicle, challenging both the validity of the stop and the officer's

vehicle search incident to his arrest. At the suppression hearing, Meckel testified he unlocked Dennis' vehicle to "search incident to arrest and to get the beer bottle."

The district court denied Dennis' suppression motion. It found the officer's testimony credible and the traffic stop supported by reasonable suspicion that a traffic infraction had been committed. It further found the officer's initial pat-down was justified for officer safety reasons, and that once Meckel saw the open beer bottle inside the vehicle, which Dennis confirmed, there was probable cause to arrest Dennis. The court then found the passenger compartment search proper as a search incident to arrest. At trial, the jury convicted Dennis of all four counts.

On appeal to the Court of Appeals, Dennis claimed multiple trial errors including that the district court should have suppressed the evidence obtained from the vehicle search. In support of this argument, Dennis relied on *Gant* and *State v. Henning*, 289 Kan. 136, 147-49, 209 P.3d 711 (2009) (declaring K.S.A. 22-2501[c] unconstitutional following *Gant*). Both cases were decided after Dennis was convicted. *Gant* held that a warrantless vehicle search incident to arrest is prohibited under the Fourth Amendment to the United States Constitution unless the arrestee is within reaching distance of the passenger compartment at the time of the search or there is a reasonable belief the vehicle contains evidence *of the crime of arrest*. 556 U.S. at 351. In *Henning*, our court adopted that Fourth Amendment principle as a parallel protection under § 15 of the Kansas Constitution Bill of Rights and declared K.S.A. 22-2501(c) unconstitutional. 289 Kan. at 148-49.

In both *Gant* and *Henning*, the respective courts invoked the judicially created exclusionary rule and suppressed the evidence obtained from the illegal searches. Neither court considered whether a good-faith exception to the exclusionary rule would have saved the illegally seized evidence. See *Daniel*, 291 Kan. at 492. In its Court of Appeals brief, the State conceded the officer's search of the vehicle was illegal to the extent it exceeded simply retrieving the beer bottle because it was not related to the crime of arrest, which was transporting an open container. But the State argued

that a good-faith exception applied since the officer acted in accordance with clearly established law when the search occurred.

While Dennis' appeal was pending with the Court of Appeals, this court decided *Daniel*, in which we considered for the first time whether the good-faith exception to the exclusionary rule applied to evidence obtained in a search incident to arrest later invalidated by *Gant* and *Henning*. In holding a good-faith exception applied, we noted the United States Supreme Court had recognized a good-faith exception in other circumstances. *Daniel*, 291 Kan. at 492, 497-98. *Daniel* relied upon *Herring v. United States*, 555 U.S. 135, 139-48, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009) (officer's reasonable reliance on negligently maintained police records); *Illinois v. Krull*, 480 U.S. 340, 349-50, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987) (officer's reliance on statute); and *United States v. Leon*, 468 U.S. 897, 922-23, 104 S. Ct. 3405, 82 L. Ed. 2d 677, *reh. denied* 468 U.S. 1250 (1984) (officer's reliance on facially valid warrant).

We noted further that before *Daniel*, this court had applied a good-faith exception when the officer relied on a warrant subsequently determined to be unsupported by probable cause in *State v. Hoeck*, 284 Kan. 441, 455-65, 163 P.3d 252 (2007). *Daniel*, 291 Kan. at 492, 497. We held that our prior precedent compelled recognizing a good-faith exception "when it can be determined the officer conducting the search incident to arrest was acting in objectively reasonable reliance on K.S.A. 22-2501(c)." 291 Kan. at 493. We held further that this exception was applicable to searches occurring before *Gant* was decided on April 21, 2009. *Daniel*, 291 Kan. at 493.

The release of *Daniel* sparked additional briefing in Dennis' appeal. Ultimately, a divided Court of Appeals held that the district court should have suppressed the evidence from the vehicle search. The majority refused to apply the good-faith exception, reasoning that *Daniel* did not control. It justified this outcome by observing that the officer did not testify that he was relying on K.S.A. 22-2501(c) when conducting the search, that the search-incident-to-arrest caselaw was unsettled at the time of the search, and that Dennis was not within the "immediate presence" of the passenger

compartment when it was searched, as specified by the statute. *Dennis*, 2011 WL 425987, at *3.

Dissenting, Judge Melissa Standridge remarked that the facts in *Dennis* were "strikingly similar" to those in *Daniel* and that the circumstances noted by the majority to deviate from *Daniel* were "distinctions without a difference and therefore fail to justify the majority's decision to depart from applicable, and mandatory, Kansas Supreme Court precedent." *Dennis*, 2011 WL 425987, at *7 (Standridge, J., dissenting).

We granted the State's petition for review. Our jurisdiction arises from K.S.A. 20-3018(b) (review of Court of Appeals decision).

## ANALYSIS

### Standard of Review

Our review of an evidence suppression issue is bifurcated. Without reweighing the evidence, the appellate court first examines the district court's findings to determine whether they are supported by substantial competent evidence. *State v. Sanchez-Loredo*, 294 Kan. 50, 54, 272 P.3d 34 (2012). The district court's legal conclusions are then reviewed de novo. If there are no disputed material facts, the issue is a question of law over which the appellate court has unlimited review. 294 Kan. at 54. In Dennis' case, the facts material to the legal issues on review are not in dispute, so the only remaining inquiry is whether the appropriate remedy is to suppress the evidence seized. This is a question of law.

### Discussion

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. This court interprets § 15 of the Kansas Constitution Bill of Rights, which specifically addresses searches and seizures, as providing the same protection. *Daniel*, 291 Kan. at 498. Warrantless searches are considered unreasonable unless they fall within a recognized exception to the warrant requirement, such as consent, search incident to lawful arrest, stop and frisk, probable cause plus exigent circumstances, the emergency doctrine, inventory searches, plain view or feel, and administrative searches of closely regulated businesses. *State v. Fitzger-*

*ald*, 286 Kan. 1124, 1127, 192 P.3d 171 (2008). The State bears the burden to prove a warrantless search was lawful. *Daniel*, 291 Kan. at 496.

To supplement the bare text of the Fourth Amendment, the United States Supreme Court created the exclusionary rule as a deterrent barring the introduction of evidence obtained in violation of the Fourth Amendment in criminal prosecutions. See *Davis v. United States*, 564 U.S. 229, 131 S. Ct. 2419, 2426-27, 180 L. Ed. 2d 285 (2011). In Kansas, our court has similarly recognized the exclusionary rule in criminal proceedings as an appropriate remedy for an unlawful search. See *Daniel*, 291 Kan. at 496. But neither the Fourth Amendment nor §15 of the Kansas Constitution Bill of Rights expressly prohibits the use of evidence obtained in violation of their respective protections. 291 Kan. at 496. Exclusion is not a personal constitutional right; rather, its purpose is to deter future violations by the State. *Davis*, 131 S. Ct. at 2426; *Daniel*, 291 Kan. at 496. Accordingly, exceptions to the exclusionary rule exist. See 291 Kan. at 492.

The search at issue in this case occurred on November 16, 2007, which predates *Gant*. And at that time, a police officer would have reasonably relied on K.S.A. 22-2501 for the permissible circumstances, purposes, and scope of a search incident to arrest in Kansas. *State v. Anderson*, 259 Kan. 16, 19, 910 P.2d 180 (1996). The statute provided:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of

"(a) Protecting the officer from attack;

"(b) Preventing the person from escaping; or

"(c) Discovering the fruits, instrumentalities or evidence of *a* crime." (Emphasis added.) K.S.A. 22-2501.

Notably, an earlier version of K.S.A. 22-2501 limited officers to searching for evidence of "*the*" crime rather than evidence of "*a*" crime. (Emphasis added.) K.S.A. 22-2501 (Furse 1995). But the scope of a permissible search was broadened in 2006 to include the language quoted above. See L. 2006, ch. 211, sec. 8. No Kansas

case had addressed the validity of the 2006 amendment changing "the" to "a" before the officer searched Dennis' vehicle.

In *Daniel*, this court considered whether to apply a good-faith exception for searches governed by K.S.A. 22-2501(c). It adopted the rule set out by the United States Supreme Court in *Krull*, in which the exception was held to apply to an officer's good-faith reliance on a statute permitting warrantless administrative searches before the statute was invalidated. We held that the exclusionary rule did not apply to evidence obtained in a search incident to arrest by an officer who acted in objectively reasonable reliance on K.S.A. 22-2501(c) before the United States Supreme Court's *Gant* decision. *Daniel*, 291 Kan. at 493.

But the Court of Appeals majority determined *Daniel* did not control the outcome in Dennis' case for three reasons: (1) The officer made no specific claim of reliance on K.S.A. 22-2501(c); (2) the State did not argue reliance on K.S.A. 22-2501(c) until its supplemental brief; and (3) unlike *Daniel*, Dennis argued the vehicle was no longer within Dennis' " 'immediate presence' " at the time of the search. *Dennis*, 2011 WL 425987, at *3. In attempting to differentiate the case from *Daniel*, the panel majority stated:

"Here, we must engage in an analysis of a different sort; *the issue here turns not on whether the officer could have objectively relied on the constitutionality of the statute, but rather on whether the officer could have objectively relied on existing case law in conducting his search of Dennis' vehicle.* We have concluded he could not, and therefore the State is not entitled to a good-faith exception to the exclusionary rule." (Emphasis added.) *Dennis*, 2011 WL 425987, at *4.

We hold that the Court of Appeals majority erred in its rationale that *Daniel* is not applicable to this case.

In finding that Meckel did not rely on the then-existing K.S.A. 22-2501(c) as the authority for his search, the panel majority looked to the officer's testimony at the suppression hearing for his subjective reliance on the statute, *i.e.*, a statement by the officer that would have proved he was actually relying on the statute. It noted the officer only testified that he entered the vehicle to "search incident to arrest and to get the beer bottle." The majority then made a factual determination from this bit of testimony that "the officer here apparently was either unaware of [K.S.A. 22-2501] or

otherwise did not rely thereon in conducting his search." *Dennis,* 2011 WL 425987, at *5. But subjective reliance is not at issue in these instances.

The good-faith exception to the exclusionary rule requires " 'objectively reasonable reliance' " by the officer. *Daniel,* 291 Kan. at 500. This standard was adopted by the Supreme Court in *Leon,* in which it explained:

"We emphasize that the standard of reasonableness we adopt is an objective one . . . 'Grounding the modifications in objective reasonableness . . . retains the value of the exclusionary rule as an incentive for the law enforcement profession as a whole to conduct themselves in accord with the Fourth Amendment.' " 468 U.S. at 919 n.20.

The panel majority mistakenly believed the officer had to literally testify at the suppression hearing that he was searching incident to arrest pursuant to K.S.A. 22-2501(c) for *Daniel* to apply because this court's caselaw at the time of the search made clear that K.S.A. 22-2501 controlled the permissible circumstances, purposes, and scope of any search incident to arrest. See, *e.g., Anderson,* 259 Kan. 16, Syl. ¶ 3; see also *State v. Conn,* 278 Kan. 387, Syl. ¶ 1, 99 P.3d 1108 (2004) (search incident to arrest may only be conducted for the purposes listed in the statute).

When the officer testified that his search of Dennis' vehicle was a "search incident to arrest," that testimony necessarily carried with it an understanding that his authority for that search emanated from K.S.A. 22-2501. See *Anderson,* 259 Kan. at 23. The officer was not required to actually recite the statute from the witness stand for that statute to be considered in an analysis of his objectively reasonable reliance on its authority to support the vehicle search. The panel majority erred by imposing this testimonial obligation on the officer and using a subjective inquiry as the linchpin for this portion of its analysis.

The panel majority also erred factually when it concluded that the State did not argue that the officer relied on K.S.A. 22-2501(c) until the State filed its supplemental brief in response to our *Daniel* decision. *Dennis,* 2011 WL 425987, at *3. The record on appeal shows the State noted the existence of K.S.A. 22-2501(c) and spe-

cifically asserted the officer's reliance on it in its opening appellate brief, stating:

"In this case, the Kansas legislature enacted amendments to K.S.A. 22-2501(c) in July of 2006 . . . . This change was designed to broaden the searches authorized in Kansas by statute to conform to the standard set by the U.S. Supreme Court in [*New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981),] and its progeny. . . . *Officer Meckel, in this case, acted in reliance not only on the clearly established case law both of the Kansas and U.S. Supreme Court, he acted in reliance on Kansas statute*." (Emphasis added.)

The State then went on to defend the officer's search based on the caselaw existing at the time it was conducted to address Dennis' constitutional arguments.

The panel majority further erred when it held that state and federal caselaw in effect at the time of the search of Dennis' vehicle was not sufficiently settled to permit application of a good-faith exception for the vehicle search. In support of this proposition, the panel majority cited *State v. Vandevelde*, 36 Kan. App. 2d 262, 138 P.3d 771 (2006), as *"the most recent case addressing the issue"* in Kansas, and it characterized the holding in *Vandevelde* as making *"reasonably clear"* that *"removal of the defendant from the vehicle invalidated a subsequent search of that vehicle."* (Emphasis added.) *Dennis*, 2011 WL 425987, at *5.

But the *Vandevelde* court made no such holding. It was an officer safety case under subsection (a) of the pre-2006 version of K.S.A. 22-2501, not subsection (c) of the post-2006 amendments at issue in Dennis' appeal. And *Vandevelde* addressed only whether the authority for a search incident to arrest based upon officer safety was applicable *after* the arrestee had been handcuffed and placed inside a patrol car. The court found it was not because the arrestee had been secured and was no longer a threat to officer safety. See 36 Kan. App. 2d at 274-75. *Vandevelde* had no application to a search incident to arrest for evidence of a crime under K.S.A. 22-2501(c), which is the issue in Dennis' appeal.

The panel majority also found the federal caselaw unsettled at the time the officer searched Dennis' car based upon what the majority perceived to be divisions within the United States Supreme Court decision in *Thornton v. United States*, 541 U.S. 615,

124 S. Ct. 2127, 158 L. Ed. 2d 905 (2004). And based on that, the panel majority concluded that the more recent *Vandevelde* decision determined the "settled" nature of the law rather than K.S.A. 22-2501(c), which it characterized as being "of dubious constitutionality." *Dennis*, 2011 WL 425987, at *5. But it is unnecessary for us to review the validity of that analysis because after *Dennis* was decided, the United States Supreme Court released *Davis*, 131 S. Ct. at 2429, in which it held that a good-faith exception for Fourth Amendment purposes applied based on an officer's objectively reasonable reliance on binding federal court precedent in the jurisdiction in which the search occurred.

Using the *Davis* rubric, we can easily look to pre-*Gant* decisions by the Tenth Circuit Court of Appeals to determine the settled nature of that circuit's precedent, which made clear that a search incident to arrest was proper "without regard to the fact that the search occurred after Defendant had been restrained . . . and without regard to the nature of the offense for which he was arrested." *United States v. Humphrey*, 208 F.3d 1190, 1202 (10th Cir. 2000); see also *United States v. McCane*, 573 F.3d 1037, 1041-42 (10th Cir. 2009) (discussing pre-*Gant* Tenth Circuit precedent). Notably, the *Davis* Court also endorsed this court's *Daniel* decision and its application of the good-faith exception based upon objectively reasonable reliance on K.S.A. 22-2501(c). *Davis*, 131 S. Ct. at 2429 n.4.

Finally, we consider whether the *Dennis* majority erred in holding that the search exceeded the scope of K.S.A. 22-2501 because it was not within Dennis' "immediate presence." In other words, regardless of the statute's constitutionality, whether K.S.A. 22-2501 was applicable to this search. The State urges us to reject this rationale because, among other reasons, it was not an argument Dennis preserved for appeal. The State is correct.

As noted in Judge Standridge's dissent, Dennis did not mention K.S.A. 22-2501 to support his claim of error or rely on the specific statutory language to make an argument that the search exceeded the statute's permissible scope. *Dennis*, 2011 WL 425987, at *9. His opening brief relied exclusively on the holdings in *Gant* and *Henning*, and he used those cases only to argue the statute was

unconstitutional. And even in his supplemental brief to the Court of Appeals following our *Daniel* decision, Dennis mentioned K.S.A. 22-2501 only three times and again only in the context of *Gant* and *Henning. Dennis*, 2011 WL 425987, at *9. Dennis never contended the statute was inapplicable—only that it was unconstitutional. Issues not briefed on appeal are deemed waived. *State v. Phillips*, 295 Kan. 929, 938, 287 P.3d 245 (2012). The panel majority erred in addressing a statutory scope issue not raised by Dennis.

For these reasons, *Daniel* controls the outcome. We hold that the officer conducted a search incident to arrest upon objectively reasonable reliance on the then-existing authority found in K.S.A. 22-2501(c). The district court correctly denied Dennis' motion to suppress. This holding requires that we remand to the Court of Appeals for consideration of those issues on appeal that were determined moot when the panel majority decided the suppression issue.

Reversed and remanded to the Court of Appeals with directions.