(17 P.3d 386)

No. 85,265

STATE OF KANSAS, *Appellant*, v. STEVEN EUGENE BOX, *Appellee*.

Opinion filed December 22, 2000.

*Steven J. Obermeier* and *Dionne Scherff*, assistant district attorneys, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, for appellant.

No appearance by appellee.

Before LEWIS, P.J., RULON, J., and GLENN D. SCHIFFNER, District Judge, assigned.

RULON, J.: The State filed an interlocutory appeal from the trial court's decision granting defendant Steven E. Box's motion to suppress evidence. We reverse and remand for further proceedings.

The facts are virtually undisputed and are as follows:

Defendant was charged with being a felon in possession of a firearm and a misdemeanor, obstruction of legal process. Defendant filed a motion to suppress the evidence alleging he did not consent to the search and the search was not justified as a search incident to arrest. The State responded by asserting the search was authorized by consent and under K.S.A. 22-2501, a search incident to defendant's arrest.

At the suppression hearing, Michael Bussell, an officer with the Lenexa Police Department, testified he stopped a Caprice driven by defendant because the car displayed a tag registered to a different vehicle. After Bussell explained the reason for the stop to

defendant, defendant was unable to provide a driver's license or proof of insurance. When Bussell requested defendant's name and date of birth, defendant advised his name was Damon Williams. A record check revealed Damon Williams had been arrested for narcotics and was a gang affiliate. For safety reasons Bussell requested a backup officer.

A passenger in the front seat was identified as Walter Laura. A record check advised that Laura had prior narcotics and weapons convictions. Laura was paralyzed from the waist down.

Bussell noticed a wallet in the ashtray, which had not been there when he initially approached the car. Bussell had defendant exit and stand to the rear of the car. Bussell suspected that defendant was lying and wanted to search the vehicle to get the wallet and anything illegal. Bussell advised defendant (who Bussell still knew only as Damon Williams), that his driver's license was suspended and asked if there was anything illegal inside the car. When defendant responded negatively, Bussell requested consent to search the car, and defendant consented. Fred Farris, another officer with the Lenexa Police Department, arrived as Bussell asked for consent to search the car.

The female passenger in the back seat was told to exit the car. Laura was not told to exit the vehicle because he did not have his wheelchair. Bussell did not make Laura sit on the ground because it was cold and rainy outside. When Bussell noticed the car had controls for acceleration and braking on the steering column, he asked Laura who owned the car. Laura advised that his cousin who was incarcerated gave the car to Laura for his care and custody. Bussell asked Laura if he could search the car and Laura agreed. None of the three occupants in the car could provide registration for the stopped vehicle.

Bussell searched the contents of the billfold, which indicated the driver's correct identity was defendant. A record check indicated defendant had an outstanding warrant for his arrest. Farris informed Bussell that defendant showed Farris the scar from a prior gunshot wound. Defendant was arrested and handcuffed.

A record check on the female passenger disclosed that she had provided fictitious identification. After the officers discovered her

correct identity, she was arrested and taken into custody on outstanding arrest warrants. Because of defendant's and Laura's criminal histories, Bussell continued his search of the vehicle in the immediate areas where defendant had been seated and where Laura still was seated.

When Bussell realized the glove compartment was locked, he asked for the key several times. Defendant stated he did not know about the key and Laura stated he had never been inside the glove compartment. A decorative bullet hanging from a key chain in the ignition heightened Bussell's suspicion that defendant or Laura could possess a gun. Although Bussell made a very cursory patdown for bulges in Laura's pants, Bussell was concerned for officer safety and wanted to search the glove compartment for a weapon due to Laura's close proximity to it. Bussell also believed the vehicle's registration would be in the glove compartment.

Farris testified he asked Laura for the key to the glove compartment because defendant admitted that he had a prior gun injury, and had been involved in drug activity. The officers knew that Laura was paralyzed because of a gunshot injury. Based upon the officers' experience, drugs and weapons usually coincided. The officers believed it was inappropriate to have Laura sit on the grass in the cold and rain, but were uncomfortable leaving Laura in the car because Laura could readily access the glove compartment.

While Bussell held his arm over Laura's torso, Farris took a screwdriver from the floorboard and used it to pry the glove compartment open. Inside was a loaded 9 millimeter handgun. When Farris told defendant they found a gun in the glove compartment, defendant immediately admitted it was his gun. Farris advised defendant not to say anything else until they arrived at the police station where defendant would be given an opportunity to make a statement.

When one of the passengers advised the officers the car contained drugs, it was towed to the police station where it could be searched further out of the inclement weather. The key to the glove compartment was eventually found in a crease in the front seat.

Subsequently, the district court found the consent to search the vehicle did not extend to the locked glove compartment. The court

further found the search was not a search incident to arrest because the officers were not searching for fruits or instrumentalities of the crime for which defendant was arrested. The trial court found officer safety did not justify the search because the defendant was outside of the car when placed under arrest, and there was little evidence to support concern for officer safety regarding Laura. The court ultimately found the search of the glove compartment was not authorized and suppressed the evidence.

The State dismissed the obstruction of legal process charge and filed this interlocutory appeal.

The State has the burden of proof to show that a search and seizure was lawful. If the facts are not in dispute, the question of whether to suppress is a question of law which is subject to unlimited appellate review. *State v. Rexroat*, 266 Kan. 50, 53, 966 P.2d 666 (1998).

The State claims the defendant's motion to suppress should not have been granted because the search was incident to defendant's arrest. However, the State does not appeal the trial court's finding regarding consent. Furthermore, the State acknowledges Kansas has not addressed whether an officer is permitted to open a locked glove compartment during a search incident to arrest.

The general rule that warrantless searches and seizures are unreasonable has five exceptions: (1) consent; (2) hot pursuit; (3) incident to a lawful arrest; (4) stop and frisk; and (5) probable cause to search with exigent circumstances. *State v. Sanders*, 5 Kan. App. 2d 189, 195, 614 P.2d 998 (1980).

K.S.A. 22-2501, the statutory authorization for a search incident to arrest, provides:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of
(a) Protecting the officer from attack;
(b) Preventing the person from escaping, or
(c) Discovering the fruits, instrumentalities, or evidence of the crime."

We begin our analysis with a review of *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034, *reh. denied* 396 U.S. 869 (1969). Law enforcement officers arrested Chimel at his res-

idence with a warrant for a burglary, searched the entire house, and confiscated numerous items from rooms other than the room where Chimel had been arrested. The *Chimel* Court held that the scope of the search was unconstitutional because it went beyond Chimel's person and areas where a weapon could have been retrieved or where evidence could have been destroyed or concealed. 395 U.S. at 768.

The *Chimel* Court held the concept of search incident to arrest was justified based upon officer safety and the rule for a search incident to arrest should be governed by the rule of *Terry v. Ohio*, 392 U.S. 1, 20, L. Ed. 2d 889, 88 S. Ct. 1868 (1968), authorizing a frisk for weapons. 395 U.S. 762-63. The *Chimel* Court further concluded the scope of such searches "must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." 395 U.S. at 762 (quoting *Terry*, 392 U.S. at 19). Under such a rule, no justification existed to routinely search rooms other than the room where an arrest occurred or through closed or concealed drawers or areas in that room, and a search incident to arrest is not justified where it is remote in time or place from the arrest. 395 U.S. at 764.

Following *Chimel*, our legislature enacted K.S.A. 22-2501. Additionally, our Supreme Court adopted six factors, based on existing federal and state case law, for a trial court to consider in deciding a motion to suppress evidence regarding the reasonableness of the scope of a vehicle search incident to a valid arrest. *State v. Tygart*, 215 Kan. 409, Syl. ¶ 2, 524 P.2d 753 (1974). The *Tygart* six factors are: (1) the closeness of the vehicle to the place of arrest, (2) the probability that seizable items related to the crime were inside the vehicle, (3) the amount of elapsed time between the arrest and the search, (4) the departure of the arrestee from the vehicle, (5) the vehicle was used in connection with the crime, and (6) the character of the place of the arrest, *i.e.*, public area, business premises or private home. Other factors could bear upon the issue, and no single factor by itself was decisive. 215 Kan. at 412.

Following *Chimel*, the United States Supreme Court decided *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, *reh. denied* 453 U.S. 950 (1981). In *Belton*, the officer

stopped a vehicle for excessive speeding; Belton was one of four occupants in the vehicle. None of the occupants owned the vehicle. Because the officer smelled burnt marijuana and saw an envelope on the floor of the car marked " 'Supergold,' " which the officer associated with marijuana, all occupants were arrested for possession of marijuana and ordered out of the car. The officer picked up the envelope, found it contained marijuana, and searched the passenger compartment of the car. The officer found Belton's jacket in the back seat, unzipped a pocket, and discovered cocaine. Belton was indicted for possession of cocaine.

Because articles inside the vehicle's passenger compartment are generally within the areas where an arrestee might reach to retrieve a weapon or evidence, the *Belton* Court held that an officer who has lawfully arrested an occupant of a vehicle may, as a contemporaneous incident of that arrest, search the passenger compartment of that vehicle and examine the contents of any open or closed containers found within the passenger compartment. 453 U.S. at 460-61. A " 'container' " was defined to include closed or open glove compartments and consoles but not trunks. 453 U.S. at 460, n. 4. The justification for searching containers was "not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justified the infringement of any privacy interest the arrestee may have." 453 U.S. at 461. The *Belton* Court held that the search of Belton's jacket was an area within his immediate control and within the meaning of the *Chimel* decision; thus, the search was constitutional. 453 U.S. at 462.

Kansas courts have applied *Belton* in upholding the scope of a search incident to an arrest. *State v. Deskins*, 234 Kan. 529, 543, 673 P.2d 1174 (1983); *State v. White*, 230 Kan. 679, 680, 640 P.2d 1231 (1982); *State v. Croft*, 6 Kan. App. 2d 821, 823, 635 P.2d 972 (1981). The first case to discuss K.S.A. 22-2501, *Chimel*, and *Belton*, was *State v. Press*, 9 Kan. App. 2d 589, 592-95, 685 P.2d 887, *rev. denied* 236 Kan. 877 (1984).

In *Press*, defendant was arrested for driving under the influence, handcuffed, and placed in the front seat of the patrol car with the seat belt fastened before the officer searched the passenger compartment of the defendant's vehicle. After finding marijuana, the

officer searched the trunk, finding more marijuana. The trial court found that the officer conducted a general search of the entire vehicle when there was no possibility defendant could have destroyed evidence while handcuffed in the patrol car. The State appealed the trial court's decision to suppress the evidence from the search.

The *Press* court noted some jurisdictions interpreted *Belton* broadly, that is, a court need only find that an article was within the passenger compartment; if so, it is deemed to have been within the arrestee's immediate control. The *Press* court further noted other jurisdictions have interpreted *Belton* narrowly, that is, each custodial arrest of the occupant of a vehicle must be evaluated to determine whether an article was within the arrestee's immediate control. Under the narrow interpretation, *Belton* did not apply to searches if the defendant was arrested, handcuffed, and seated in the back seat of an officer's car without a realistic possibility of access to the vehicle. 9 Kan. App. 2d at 594-95. The *Press* court held that Kansas adopted the broader interpretation of *Belton*. 9 Kan. App. 2d at 595-97.

Here, the State requests this court to adopt the bright line interpretations of *Belton* from other jurisdictions regarding a search of a locked glove compartment incident to an arrest. The State relies upon *State v. Hanna*, 173 Ariz. 30, 839 P.2d 450 (Ct. App. 1992), *cert. denied* 507 U.S. 997 (1993), and *United States v. McCrady*, 774 F.2d 868 (8th Cir. 1985). For us, the primary question is whether Kansas should extend *Belton* to apply to locked glove compartments.

Although the Tenth Circuit has not addressed the search of a locked glove compartment, it has discussed the extent of *Belton*. In *United States v. Cotton*, 751 F.2d 1146 (10th Cir. 1985), officers stopped a car driven by defendant because defendant and the car matched a description from a radio broadcast regarding a stolen vehicle. Defendant argued *Chimel* and *Belton* did not apply because he had been taken out of the car, arrested, and handcuffed before the other officer searched the passenger compartment of his vehicle and found a bag containing blank titles, VIN plates, and keys. After discussing *Belton* and the relaxation of the exclusionary

rule for vehicles, the *Cotton* court held the challenged search was conducted incident to a lawful arrest and was reasonable under the totality of the circumstances even though the arrestee was outside the vehicle and handcuffed when the vehicle was searched. 751 F.2d 1147-50.

Later, the Tenth Circuit distinguished *Cotton* in *U.S. v. Lugo*, 978 F.2d 631 (10th Cir. 1992). In *Lugo*, after Lugo was arrested for traffic charges, handcuffed, and transported to jail, an officer inventoried the contents of the truck even though it was not going to be towed. The arresting officer reached inside a door panel that had been pulled away and found two bricks of cocaine. The *Lugo* court noted the rationale of *Belton* is that the inside of a vehicle is an area which an arrestee might reach to retrieve a weapon or evidence. Therefore, the court stated, it follows that the warrantless search incident to arrest is illegal if the search is remote in time or place from the arrest because no exigency exists. The *Lugo* court concluded the defendant was not a threat after being taken from the scene and the *Belton* rationale had evaporated. *Belton* was found inapplicable to the facts and the warrantless search was not justifiable. 978 F.2d 633-35. Clearly, the Tenth Circuit in *Lugo* rejected the analysis used by the Eighth Circuit in *McCrady* and limited the *Belton* bright line rule.

If the bright line rule of *Belton* has no limitations, as in *McCrady*, the six *Tygart* factors are no longer controlling. Yet, Kansas courts reverted to the *Tygart* factors after acknowledging that Kansas follows *Belton*. See *State v. McClain*, 258 Kan. 176, 183-84, 899 P.2d 993 (1995); *State v. Van Wey*, 18 Kan. App. 2d 260, 261-62, 850 P.2d 283 (1983).

The trial court here found it was more reasonable for the officers to remove Laura from the vehicle. Both officers testified they did not want to subject Laura to sitting on the grass in the cold and rain. Yet, they feared leaving Laura in the vehicle within close proximity of the locked glove compartment where a weapon could be concealed. So, the officers chose to search the glove compartment with Laura in the front seat. Another alternative would have been to call for another officer. However, these officers indicated they were on the street because the bad weather had patrol vehicles

working traffic accidents. The last alternative was to allow Laura to remain in the car without searching the glove compartment. "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Terry*, 392 U.S. at 23.

We conclude under *Chimel, Tygart,* and K.S.A. 22-2501, the officer's safety after the arrest of defendant and the female passenger outweighed defendant's privacy interest in the locked glove compartment, because Laura was not under arrest or handcuffed and remained in the car and in close proximity to the locked glove compartment. Under such circumstances, exigent circumstances existed for the warrantless search. Under *Chimel,* the Fourth Amendment to the United States Constitution requires the government to show that the exigencies of the circumstances made a warrantless search imperative. Considering the totality of the unique circumstances, we conclude the officers articulated a reasonable basis for concern about their safety after the arrest of defendant and the female passenger, and officer safety is an authorized purpose for a search incident to an arrest under K.S.A. 22-2501(a).

Our holding here is specifically based upon *Chimel* and *Tygart* and the unique facts of this case and not based on the bright line rule of *Belton* and *Press*.

We reverse and remand for further proceedings.