(52 P.3d 915)
No. 88,157

STATE OF KANSAS, *Appellant*, v. ROBIN RICHMOND, *Appellee*.

Opinion filed August 30, 2002.

*Steve Stockard*, assistant county attorney, *Julie Richey*, county attorney, and *Carla J. Stovall*, attorney general, for appellant.

*Michael Gayoso, Jr., Candace M. Brewster*, and *Vernon D. Grassie*, of Law Office of Grassie, Brewster, & Gayoso, of Girard, for appellee.

Before ELLIOTT, P.J., GERNON and MARQUARDT, JJ.

ELLIOTT, J.: The State appeals the trial court's suppression of evidence found in Robin Richmond's purse following a car stop.

We affirm.

Richmond was charged with possession of cocaine with intent to sell, K.S.A. 2001 Supp. 65-4161(a). Richmond's motion to suppress was based on her arguing officers searched her purse, where cocaine was found, without probable cause and without her consent.

The parties agree on the underlying facts but dispute the legal effect of the search as applied to the undisputed facts.

Since this appeal is fact sensitive, we provide the trial court's comprehensive factual findings as follows:

"[L]ocal KBI agents on July 26 of the year 2000 received information from an F.B.I. agent by the name of Jeff Harris that the defendant and her husband Lee Richmond were distributing cocaine in this area. Agent Harris indicated this information came from a reliable informant whom he did not identify.

"No. 2, the confidential informant accurately described the car the defendant normally drove from the Kansas City area down to the Pittsburg area. The informant described this as a burgundy and pearl colored Cadillac.

"At a task force meeting on July 26, 2000, KBI Agent Chad Commons relayed the above information. Terry Davis of the Pittsburg Police Department was at the meeting and advised he had conducted a prior investigation of the defendant in 1999 for the alleged sale of drugs. Davis related that an informant, who was buying drugs from a Charlotte Buckley, advised that a black female by the name of Robin Richmond was delivering crack cocaine from Kansas City to Buckley's residence on 18th Street in Pittsburg.

"Finding of fact No. 4, at the meeting Davis further related that he was contacted by the Crawford County Sheriff's Office in 1998 and was advised that the defendant was supposedly selling crack cocaine from a room in the Super Eight Motel in Pittsburg. Davis later verified that a rental car registered to a Robin Richmond had stayed at that motel.

"No. 5, Davis also related that in the past he had received a call from an anonymous female who stated that the defendant was coming down from Kansas City to an apartment at 102 S. Locust in Pittsburg in a white Nissan Maxima to package and sell crack cocaine.

"Fact No. 6, Davis advised that he had conducted surveillance on the apartment at 102 S. Locust in January of 1999, and had indeed observed a black female exit a white Nissan, enter the apartment, and later leave the premises. The tag on the Nissan was registered to a Robin Richmond and the driver of the vehicle drove in a zigzag pattern in what Davis believed was an attempt to avoid or lose a possible tail.

"No. 7, Davis stated that he also had called the Kansas City Missouri police and had been told that the defendant had been arrested for possession of cocaine in the past, and allegedly lived in a crack house. . . .

"Finding of fact No. 8, Agent Commons was advised by Agent Shawn Campiti on August 4th of the year 2000, pursuant to anonymous tip received by Campiti that the defendant was in Pittsburg driving a gold colored Intrepid automobile, that she was going to be in the 100 block of West Third Street selling cocaine. Campiti surveilled that address and observed a black female in a gold Intrepid enter a residence for about 30 minutes. When the individual left the residence she drove around in a zigzag fashion in an apparent attempt to avoid any possible tail. The informant gave an accurate description of the clothing worn by the subject female.

"No. 9, Detective John Austin advised Commons that an informant had told Austin that the defendant sold drugs in Pittsburg. The informant was also aware of the defendant's evasive driving techniques and the locations where the drugs were allegedly sold. The information was compatible with the information related by Davis. Detective Austin further verified through city water department files the address of an individual who had allegedly bought drugs from the defendant. This address had been related by the informant to Austin.

"No. 10, Commons and Campiti observed the gold Intrepid at the same address in the 100 block of West Third Street on September 22, 2000. Upon leaving this address, the defendant again drove in an evasive manner by backtracking and going down cul-de-sacs, again, in an apparent attempt to flush out anyone who might be following her. *The decision was made to stop the defendant's vehicle and the agents therefore summoned a marked sheriff's office patrol car to make the stop because the agents were in an unidentified vehicle. The defendant was not observed to be violating any laws—any traffic laws prior to her stop.*

"The defendant's vehicle was stopped *so agents could get permission to search. The defendant was alone in the car and there were six law enforcement officers at the scene. The defendant was not free to leave.* Approximately five to 10 minutes after the stop the defendant was asked for permission to search the vehicle to which she consented. The search of the vehicle revealed no contraband. *Approximately 30 minutes after the vehicle stop, and after the vehicle search was completed, the defendant was asked for permission to search her purse. The defendant refused permission to search her purse. The purse was nevertheless searched and certain contraband was found in her purse.*

"No. 12, the defendant was calm, cooperative, and did not display any aggression. *At some point in time during the search of the vehicle and the purse the defendant was placed in handcuffs. The officers did not fear for their safety during the stop and subsequent searches. The defendant maintained the physical possession of her purse on her arm during the search of the vehicle.*" (Emphasis added.)

As noted above, the trial court granted Richmond's motion to suppress.

The State contends it had probable cause to search the purse based on reliable information collected for about 2 years. Specifically, the State argues exigent circumstances permit the search of a readily mobile car.

On appeal, we ordinarily give great deference to the trial court's findings of fact on suppression issues, but the ultimate question of suppression is a legal question requiring independent appellate determination. See *State v. Kimberlin*, 267 Kan. 659, 661-62, 984 P.2d 141 (1999).

Warrantless searches are unreasonable, subject to a few well-defined exceptions. *State v. Houze*, 23 Kan. App. 2d 336, 337, 930 P.2d 620, *rev. denied* 261 Kan. 1088 (1997). Among the recognized exceptions is probable cause to search with exigent circumstances. *State v. Box*, 28 Kan. App. 2d 401, 404, 17 P.3d 386 (2000).

In the present case, the State relies on exigent circumstances, which allow a warrantless search where there is probable cause for the search and exigent circumstances justify an immediate search. See *State v. Platten*, 225 Kan. 764, 769, 594 P.2d 201 (1979).

Exigent circumstances may allow the warrantless search of a car when probable cause has been established to justify a search. *Carroll v. United States*, 267 U.S. 132, 149, 69 L. Ed. 543, 45 S. Ct. 280 (1925); *State v. Jaso*, 231 Kan. 614, Syl. ¶ 2, 648 P.2d 1 (1982). However, exigent circumstances do not include situations where only a mere possibility exists that evidence could be destroyed or concealed. *State v. Hardyway*, 264 Kan. 451, 465, 958 P.2d 618 (1998).

Once probable cause is established concerning the existence of contraband in a vehicle, then any container capable of containing the contraband may ordinarily be searched. *State v. MacDonald*, 253 Kan. 320, 325, 856 P.2d 116 (1993).

In the present case, we are not concerned with probable cause for the initial search because Richmond consented to the search of her car. See *State v. Kriegh*, 23 Kan. App. 2d 935, 938, 937 P.3d 453 (1997); *State v. Schmitter*, 23 Kan. App. 2d 547, 556, 933 P.2d 762 (1997). Under the facts of this case, Richmond's consent to search her car was voluntary.

But while officers searched Richmond's car, she was allowed to keep her purse, and it was not in the car during the search. When the officers asked Richmond to consent to the search of her purse, she refused. The scope of a search is generally defined by its expressed object. *Florida v. Jimeno*, 500 U.S. 248, 251, 114 L. Ed. 2d 297, 111 S. Ct. 1801 (1991).

The standard for measuring a suspect's consent is one of "objective" reasonableness—what would the typical, reasonable person have understood by the exchange between the officer and the suspect. 500 U.S. at 251.

The question in the present case, then, becomes whether the typical, reasonable person would think, based on the exchange between police and Richmond, that Richmond consented to the search of the purse which she always had in her possession. Under the trial court's factual findings, Richmond effectively withdrew her consent with respect to any search of her purse.

What transpired between Richmond and the police is not disputed. At the preliminary hearing, Special Agent Commons testified as follows:

"Q. So you exited the car and did you ask her if you could search her purse?
"A. Yes.

. . . .

"Q. And did she consent to search the purse?
"A. No.
"Q. And how many times did you ask her if you could search her purse?
"A. More than once. Probably two, maybe three times. I can't tell specific.
"Q. And did you ultimately search the purse?
"A. Yes.
"Q. Describe how you came to search the purse?
"A. I had asked her for insurance information for the vehicle, she stated she did not have it. I asked her to look in her purse again. She looked briefly, had her purse sitting on the trunk of the car and she looked for a second, could not find it or did not know where it was in her purse. And then I asked her to leave her purse on the car and step back to the other officers."

Richmond expressly and narrowly limited the scope of her consent to search; Special Agent Commons exceeded the scope of Richmond's consent and thereby violated her rights by searching

her purse. The trial court properly granted Richmond's motion to suppress the evidence found in her purse.

Affirmed.