(202 P.3d 44)
No. 99,673

STATE OF KANSAS, *Appellee,* v. SHELIA D. DAVISON, *Appellant.*

—

Opinion filed February 20, 2009.

*Randall E. Fisher,* of Law Office of Randall E. Fisher, of Newton, for appellant.

*Ty Kaufman,* county attorney, and *Stephen N. Six,* attorney general, for appellee.

Before RULON, C.J., GREENE, J., and LARSON, S.J.

RULON, C.J.: Defendant Shelia D. Davison appeals from her convictions on various drug charges and a driving while suspended charge, all stemming from a traffic stop and a subsequent search of the defendant's car following her arrest. We affirm.

## Underlying Facts

Officer Brad Smith of the Lindsborg Police Department stopped a vehicle for failing to dim headlights. The defendant was the driver and only occupant of the vehicle. Officer Smith approached the vehicle, made contact with the defendant, and told her he was going to issue a warning ticket for failing to dim headlights.

Officer Smith obtained the defendant's driver's license and insurance information and returned to his patrol car to run a check on the defendant. Smith learned the defendant's license was suspended and arrested the defendant. Smith asked the defendant to step out of the car, and she complied. Smith then searched and handcuffed the defendant before placing her in the backseat of his patrol car. Although the defendant was upset, she did not cause any problems after the arrest. Smith found no weapons on the defendant, was not in fear of his safety, and was not concerned the defendant might escape.

Just before Smith placed the defendant in his patrol car another officer arrived on the scene. After being informed the defendant was under arrest the second officer began to search the defendant's car, considering the search to be a search incident to arrest.

Meanwhile, Officer Smith asked the defendant if there was anyone who could come get the car. The defendant gave Smith the name and number of a friend. Smith called the friend, who agreed to come get the vehicle.

Officer Smith then helped the second officer complete the search of the defendant's vehicle. The search revealed a purse on the driver's seat which contained the following: a hand-rolled marijuana cigarette; a small plastic tube containing a white residue (commonly known as a "snort tube" and used for ingesting powdered narcotics); and a spiral notebook with writings that indicated the notebook was an "owe" sheet. The notebook contained first names or nicknames with dates, dollar amounts, and weight amounts. As we understand, such a notebook may be used by a person selling narcotics to track where and when a sale is made, what is sold, and how much is owed.

On the passenger seat of the defendant's vehicle, the officers found a black, zippered case containing an electronic scale with a

white powder residue on the scale. The black case additionally contained miniature spoons of the type used to bag portions of narcotics and numerous small bags containing crystal methamphetamine. One of the bags of methamphetamine had "Sheila 2¼" written on the bag in blue marker. The officers found $455.83 in denominations consistent with a drug distribution operation.

No drug tax stamps were found on any of the suspected drugs found within the defendant's vehicle. Several of the items found in the search were submitted to the KBI laboratory for testing. The tests showed marijuana in the cigarette and methamphetamine in the plastic tube, on the digital scale, on one of the spoons, and in three bags; the contents of the bags had a total net weight of 2.71 grams of methamphetamine.

Once the officers had completed the search, the defendant's friend arrived and the officers released the vehicle before driving the defendant to the jail. Officer Smith advised the defendant of her *Miranda* rights. The defendant waived her rights and denied knowledge of the items found in her vehicle. According to the defendant a friend named "Wendy" had been with the defendant earlier in the evening and the defendant suggested Wendy may have left the items in the vehicle. The defendant could not recall Wendy's last name. The defendant said she picked up Wendy at a friend's house in Hutchinson and Wendy had exited the defendant's vehicle upon seeing Wendy's ex-husband. The defendant said Wendy was in the defendant's vehicle alone while the defendant purchased gasoline in Hutchinson.

Eventually, the State charged the defendant with one count of possession of methamphetamine with intent to distribute, in violation of K.S.A. 2007 Supp. 65-4161; one count of possession of methamphetamine without drug tax stamps, in violation of K.S.A. 79-5208; one count of possession of marijuana, in violation of K.S.A. 65-4162; one count of possession of drug paraphernalia, in violation of K.S.A. 2006 Supp. 65-4152; and one count of driving while suspended, in violation of K.S.A. 2006 Supp. 8-262.

Later, the defendant filed a motion to suppress all evidence and statements obtained by the officers, alleging such evidence was obtained in the course of an illegal search and seizure.

Before the district court, the defendant asserted the search was controlled by K.S.A. 22-2501, which is Kansas' provision for searches incident to arrest. K.S.A. 22-2501 provides that when a lawful arrest is made, the officer "may reasonably search the person arrested and the area within such person's immediate presence" for three enumerated purposes. The defendant argued a "person who has been removed from her car, arrested, handcuffed and placed in a patrol car many feet from her own vehicle is not in the immediate presence of the area searched, that is, the car." The defendant asserted the search did not fall within the "proximity requirement" of K.S.A. 22-2501 and was therefore illegal.

The State filed an extensive response to the defendant's motion, including legislative history for K.S.A. 22-2501. The State argued a legislative change to K.S.A. 22-2501 brought Kansas' law regarding searches incident to arrest within the purview of *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), and its progeny, and the search here was proper under the law set forth in such cases.

The district court agreed with the State's position that *Belton* now controls in Kansas following the 2006 amendment to K.S.A. 22-2501, and under *Belton* the challenged search was a proper search incident to arrest. The district court accordingly denied the defendant's motion to suppress.

The defendant waived her right to a jury trial, and the case was tried to the district court on stipulated facts. The defendant preserved the search and seizure issues presented in this appeal and asserted there was insufficient evidence to sustain a conviction. The district court found the defendant guilty of all five counts of the complaint.

The defendant timely appealed.

## The Search

On appeal the defendant raised the same issues as presented to the district court.

The material facts underlying the motion to suppress are not in dispute, making the question of whether to suppress a question of law over which this court has unlimited review. See *State v. Port-*

*ing*, 281 Kan. 320, 324, 130 P.3d 1173 (2006). Our analysis will involve interpretation of K.S.A. 22-2501, and such interpretation is a question of law requiring unlimited review. See *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008).

K.S.A. 22-2501 states:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of
(a) Protecting the officer from attack;
(b) Preventing the person from escaping; or
(c) Discovering the fruits, instrumentalities, or evidence of a crime."

Our Supreme Court has held that "[i]n Kansas, the permissible circumstances, purposes, and scope of a search incident to arrest are controlled" by K.S.A. 22-2501. *State v. Conn*, 278 Kan. 387, 391, 99 P.3d 1108 (2004). The "permissible purposes" are to protect the officer from attack, prevent escape, or discover the fruits, instrumentalities, or evidence of a crime; and the physical "scope" is the person arrested or the area within such person's immediate presence.

The issue squarely before us is the permissible physical scope of the challenged search. The defendant does not challenge the circumstances or the purposes of the search, but only whether the vehicle was within the defendant's immediate presence as contemplated by the above statute.

The first case cited by the defendant is *State v. Anderson*, 259 Kan. 16, 910 P.2d 180 (1996). In *Anderson*, a police officer made a traffic stop and arrested the driver for driving on a suspended license and for an outstanding warrant. The officer arrested the driver and placed her in the backseat of his patrol car and then returned to her vehicle. The officer and his backup asked the passenger to exit the vehicle and then searched the vehicle, finding a variety of drug-related items. The only possible grounds for the search was that it was a search incident to arrest under K.S.A. 22-2501.

The *Anderson* court ultimately determined the search and seizure was unlawful under K.S.A. 22-2501 because the officer had not conducted the search for any of the allowable statutory *pur-*

*poses.* There was no concern of attack or escape, and the officer was not searching for fruits, instrumentalities, or evidence of the traffic crime or warrant for which the driver was arrested. Importantly for the analysis of the present case, the *Anderson* court specifically stated: "There is no issue in the case before us relative to the scope of the search." 259 Kan. at 21. Because the *Anderson* court relied on *the purpose* and not *the scope* of the search to find it unlawful, *Anderson* does not support the defendant's scope argument in this case.

The next case cited by the defendant is *State v. Conn,* 278 Kan. 387, 99 P.3d 1108 (2004). *Conn* involved a traffic stop in which the defendant could not produce a driver's license for the police officer. The officer then conducted a search of the vehicle for the purpose of finding proof of identification and instead found drugs and drug paraphernalia. Citing *Anderson,* the *Conn* court determined the search was not a valid search incident to arrest because the search was not conducted for a valid *purpose* under K.S.A. 22-2501. 278 Kan. at 391-92. The *Conn* decision does not support the defendant's argument here because the challenge in *Conn* was made on the basis of *the purpose* of the search, not *the scope.*

The final case cited by the defendant in support of her argument is *State v. Vandevelde,* 36 Kan. App. 2d 262, 138 P.3d 771 (2006). In *Vandevelde,* police officers made a traffic stop after observing the defendant engage in actions suggesting the defendant was involved in the sale of narcotics. Due to the defendant's noncompliance with the officers' commands, the defendant was arrested and the officers proceeded to search his vehicle, finding rock cocaine in a pipe. After discussing *Anderson* and *Conn,* this court determined the search was not a valid search incident to arrest, because it was not reasonably conducted for one of the *purposes* under K.S.A. 22-2501. 36 Kan. App. 2d at 270-75. *Vandevelde* does not support the defendant's scope argument.

The defendant contends the plain language of the statute and the decisions discussed above show the phrase "area within [the] person's immediate presence" means law enforcement officers cannot search an automobile as a search incident to arrest once the officers have arrested, searched, handcuffed, and then placed the

person in a patrol car where that person is not in proximity to and cannot make contact with the vehicle. However, as shown above, the decisions cited by the defendant did not depend on the scope, but rather the purposes of the searches in question.

Case law in Kansas and other jurisdictions indicates when an arrestee has been a "recent occupant" of a vehicle, such vehicle may be considered to be within the person's "immediate presence" and therefore within the proper scope of a search incident to arrest under K.S.A. 22-2501.

Before the United States Supreme Court decided *Belton*, but after K.S.A. 22-2501 was enacted, our Supreme Court set forth six key factors to be considered in deciding whether a vehicle is within the lawful scope (the "arrestee's immediate control") of a search incident to arrest. *State v. Tygart*, 215 Kan. 409, 412, 524 P.2d 753 (1974). The factors are:

"(1) Proximity of the vehicle to the place of arrest; (2) the probability that the vehicle contains seizable items related to the crime; (3) the amount of time which has elapsed between the arrest and the search; (4) the recent departure of the arrestee from the vehicle; (5) the fact that the vehicle had been employed in some way in connection with the crime; and (6) the character of the place of arrest, *i.e.*, public street, business premises or private home. Other factors may bear upon the question and no single factor, standing alone, is decisive in a given case for each may have a significant effect on the court's determination of whether the search was a reasonable one." 215 Kan. at 412.

In *Belton*, the defendant was stopped for speeding. The police officer smelled burned marijuana and spotted an envelope he suspected of containing marijuana on the floor of the vehicle. The officer arrested the four occupants of the vehicle, including the defendant, for possession of marijuana and directed them to stand in four separate areas by the side of the car. The officer then searched the passenger compartment of the car and found cocaine inside a jacket in the car.

The *Belton* Court was faced with the question of whether the interior of an automobile recently occupied by an arrestee can be considered an " 'area within the immediate control of the arrestee.' " 453 U.S. at 460. The *Belton* Court decided "when a policeman has made a lawful custodial arrest of the occupant of an au-

tomobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. at 460.

In *State v. White*, 230 Kan. 679, 640 P.2d 1231 (1982), our Supreme Court applied *Belton* in determining a seizure of a jacket and cap from the vehicle of a defendant arrested for robbery was proper, even though the defendant had already been removed from the vehicle. In *State v. Deskins*, 234 Kan. 529, 531, 543, 673 P.2d 1174 (1983), our Supreme Court cited *White* in upholding the lawfulness of a search of the defendant's vehicle following the defendant's arrest for DUI, even though the defendant was already in the police car when the search took place. Neither *White* nor *Deskins* discussed K.S.A. 22-2501.

In *State v. Press*, 9 Kan. App. 2d 589, 590, 593-97, 685 P.2d 887, *rev. denied* 236 Kan. 877 (1984), this court cited *Belton, White*, and *Deskins* in upholding the search of an arrestee's vehicle under K.S.A. 22-2501 where the arrestee was handcuffed and placed in a patrol car with the seat belt fastened before the officers began searching his vehicle. Judge Rees dissented, arguing *Belton* was being read too broadly, *White* was decided on mistaken grounds, and *Deskins* did not sufficiently examine the issue to be cited as dispositive. 9 Kan. App. 2d at 598, 604-06. Judge Rees' narrower view of *Belton* was undermined, at least somewhat, by the United States Supreme Court's later decision in *Thornton v. United States*, 541 U.S. 615, 158 L. Ed. 2d 905, 124 S. Ct. 2127 (2004). The *Thornton* Court reiterated that an arresting officer may search the entire passenger compartment of a vehicle if the arrestee is a "recent occupant," even if the contraband in the passenger compartment is no longer "readily accessible" to the arrestee. 541 U.S. at 622-23.

This court revived the *Tygart* factors in *State v. Van Wey*, 18 Kan. App. 2d 260, 850 P.2d 283 (1993). In *Van Wey*, police officers arrested the defendant outside an apartment complex for criminal trespass and battery after breaking up a fight in which he was involved. The officers proceeded to search the defendant's vehicle, even though the defendant was arrested more than 25 feet from the vehicle and the defendant had arrived at the location more

than 20 minutes before the fight started. After noting *Belton*, *White*, and *Press*, this court applied the *Tygart* factors to conclude the defendant was not an "occupant" of the vehicle under *Belton*, and the search was therefore improper. The court distinguished *White* and *Press* by noting the defendants in those cases were removed from their automobiles immediately before the arrest. 18 Kan. App. 2d at 261-62.

Our Supreme Court applied the *Tygart* factors again while relying on *Belton* in *State v. McClain*, 258 Kan. 176, 177, 183-84, 899 P.2d 993 (1995), to uphold police officers' search of a vehicle after arresting its driver and passenger for armed robbery.

This court subsequently noted Kansas courts have continued to apply the *Tygart* factors "after acknowledging that Kansas follows *Belton*." See *State v. Box*, 28 Kan. App. 2d 401, 408, 17 P.3d 386 (2000); see also *Vandevelde*, 36 Kan. App. 2d at 271 (*Tygart* factors "are helpful when considering the reasonableness of the scope of the search.").

As we understand, the defendant argues our Supreme Court's decision in *Anderson* narrowed the applicability of *Belton* as to the *physical scope* of a search incident to arrest under K.S.A. 22-2501. However, as previously noted, the *Anderson* court stated there was no issue before it "relative to the scope of the search." See 259 Kan. at 21, 23.

We are convinced Kansas courts have continuously applied *Belton* to permit the search, under K.S.A. 22-2501, of a vehicle *recently* occupied by an arrestee, with the determination of whether the arrestee is a "recent occupant" often made by reference to the *Tygart* factors.

Applying the *Tygart* factors here leads us to the conclusion the search of this defendant's vehicle did not exceed the permissible scope. Here, the defendant was arrested in her vehicle, the search began shortly after the arrest was made and shortly after the defendant had departed the vehicle, and the arrest was made at a traffic stop on a public street. These factors all support the validity of the search.

Under the facts here the search here did not exceed the permissible *scope* for such automobile searches and was a valid search

incident to arrest under K.S.A. 22-2501. Accordingly, the district court did not err in denying the defendant's motion to suppress the evidence seized in this search.

## Sufficiency of Evidence

The defendant argues there was insufficient evidence to support her drug convictions. We disagree.

When an appellate court is asked to review the sufficiency of the evidence in a criminal case, the court reviews all the evidence in the light most favorable to the prosecution and must be convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Gutierrez*, 285 Kan. 332, 336, 172 P.3d 18 (2007).

The convictions challenged by the defendant are four "possession" crimes: possession of methamphetamine with intent to distribute, in violation of K.S.A. 2007 Supp. 65-4161; possession of methamphetamine without drug tax stamps, in violation of K.S.A. 79-5208; possession of marijuana, in violation of K.S.A. 65-4162; and possession of drug paraphernalia, in violation of K.S.A. 2006 Supp. 65-4152.

To support the conviction of possession of methamphetamine with intent to distribute, the evidence had to show that the defendant sold; offered for sale or had in her possession with intent to sell, deliver, or distribute; prescribed; administered; delivered; distributed; or dispensed marijuana. See K.S.A. 2007 Supp. 65-4161.

To support the conviction of possession of methamphetamine without drug tax stamps, the evidence had to show that the defendant was a "dealer" who distributed or possessed methamphetamine without affixing the appropriate tax stamp, label, or other indicia. See K.S.A. 79-5208. A "dealer" includes any person who, in violation of Kansas law, acquires or possesses more than 1 gram of methamphetamine. See K.S.A. 79-5201(c).

To support the conviction of possession of marijuana, the evidence had to show that the defendant had marijuana in her possession or under her control. See K.S.A. 65-4162.

To support the conviction of possession of drug paraphernalia, the evidence had to show that the defendant possessed with intent to use any drug paraphernalia to use, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of the Uniform Controlled Substances Act. See K.S.A. 2006 Supp. 65-4152(a)(2).

The defendant's primary argument is there was *insufficient* evidence to meet the possession requirement for each crime. The defendant contends there was nothing to identify the drugs or drug-related items as the defendant's, and she claims the items belonged to "Wendy," the passenger who the defendant says was riding with her earlier in the evening. This argument fails. This court has previously defined "possession" of a controlled substance as having control over such substance with " 'knowledge of, and intent to have, such control. Possession and intent, like any element of a crime, may be proved by circumstantial evidence.' " *State v. Marion,* 29 Kan. App. 2d 287, 290, 27 P.3d 924, *rev. denied* 272 Kan. 1422 (2001).

Here, the stipulation of facts shows the officers found numerous drugs and drug-related items in the passenger compartment of defendant's vehicle, including a marijuana cigarette, 2.71 grams of methamphetamine in various bags, an electronic scale with methamphetamine residue, a notebook that appeared to be an "owe sheet," a "snort tube," and $455.83 in cash. The marijuana, "snort tube," and "owe sheet" were found in a purse on the driver's seat. The scale, money, and bags of methamphetamine were found on the passenger seat of the vehicle. The defendant was the only occupant of the vehicle.

The drugs and drug-related items were found in close proximity to the defendant in a vehicle of which the defendant was the only occupant. There is sufficient evidence the defendant was in possession of these items.

The defendant next contends there was no evidence of any drug sale activity or that the defendant was involved in such activity. However, the officers testified the "owe sheet," the electronic scale, and the money were all indicative of drug sales. Additionally, there were "numerous small bags" containing methamphetamine.

This evidence was sufficient to show drug sale activity. The defendant's proximity to and exclusive control over these items were sufficient to link her to this activity.

There was sufficient evidence supporting the defendant's convictions.

Affirmed.

GREENE, J., dissenting: I respectfully disagree with my colleagues' application of K.S.A. 22-2501; I would conclude that the vehicle here was no longer "within [Davison's] immediate presence" when the search was conducted. I would reverse the district court and direct that the fruits of the search be suppressed.

Before the search of Davison's vehicle was initiated, Davison was searched, handcuffed, and placed in the backseat of the patrol car. As she was seated in the patrol car, Officer Smith asked her if there was someone who could come and get the car, and Davison provided the name and address of a friend. Officer Smith then contacted the friend, who agreed to come and get the car. The officer testified that it was never his intention to impound the vehicle. These conversations were apparently complete before the second officer arrived at the scene, confirmed that Davison was under arrest, and got into Davison's vehicle to begin a "partial search." After finding an item of contraband, the second officer conferred with Officer Smith, who then assisted in completing a more thorough search that resulted in additional items of contraband.

I would not struggle with the question whether to apply K.S.A. 22-2501 or the standards announced by the United State Supreme Court in *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981). If the legislature had been persuaded that we needed to simply apply the standards of *Belton* in Kansas, it had the opportunity to repeal K.S.A. 22-2501. Instead, it chose not to do so, adhering to an amended statutory standard. As noted by our Supreme Court in *State v. Anderson*, 259 Kan. 16, 910 P.2d 180 (1996), where the statute sets forth the permissible circumstances and purposes under which a search incident to arrest can be made, it "may be more restrictive than prevailing case law on the Fourth

Amendment would permit, but this does not alter the plain language of the statute." 259 Kan. at 22. The statute applies here, and we should not confuse its application with standards in *Belton* or its progeny.

The amended statute allows a search of "the area within [the arrested] person's immediate presence." K.S.A. 22-2501. As recognized by the majority, Davison has not challenged the *purpose* of the search but has challenged the permissible physical *scope* of the search, arguing that the vehicle was no longer "within [Davison's] immediate presence" when the search was initiated.

Our initial task should be a careful analysis of Kansas case law construing K.S.A. 22-2501 for guidance in construing and applying the phrase "the area within [the arrested] person's immediate presence." With due respect to my colleagues, I believe we should take care to distinguish prior cases where the *Belton* standards rather than the statutory language guided the analysis. Having determined that the statute applies here, I contend we need not be guided by the federal constitutional standards articulated in *Belton* or its progeny.

In its analysis of the paramount issue, the majority first cites and relies on *State v. Tygart*, 215 Kan. 409, 524 P.2d 753 (1974). I would conclude that *Tygart* is not very helpful here because it upheld a search on the combined grounds of incident to arrest and independent probable cause. Moreover, the six-prong test set forth by the court in *Tygart* was not clearly limited to the statutory standard; the court clearly relied on both state and federal law to promulgate a more "general" test for an entirely different criteria, *i.e.*, "within the arrestee's immediate *control*." (Emphasis added.) 215 Kan. at 412. Obviously, "control" is not necessarily synonymous with "presence," and the test should have little if any application in a pure statutory application. Finally, the circumstances present in *Tygart* have no similarity whatsoever to the facts before us here.

The majority next discusses *State v. White*, 230 Kan. 679, 640 P.2d 1231 (1982), and *State v. Deskins*, 234 Kan. 529, 531, 673 P.2d 1174 (1983), but concedes that K.S.A. 22-2501 was not the basis for these decisions, nor was it discussed by the court in upholding the respective searches in these cases. I would not rely on

these cases in determining how we have traditionally construed or applied K.S.A. 22-2501.

The majority then discusses *State v. Press*, 9 Kan. App. 2d 589, 685 P.2d 887, *rev. denied* 236 Kan. 877 (1984), *State v. Van Wey*, 18 Kan. App. 2d 260, 850 P.2d 283 (1993), *State v. McClain*, 258 Kan. 176, 899 P.2d 993 (1995), *State v. Box*, 28 Kan. App. 2d 401, 17 P.3d 386 (2000), and *State v. Vandevelde*, 36 Kan. App. 2d 262, 138 P.3d 771 (2006). Notably, although the court in *Press* cites and quotes K.S.A. 22-2501, none of these cases actually construes or applies the statutory language at issue here, and instead they rely on and apply either *Belton, White, Tygart,* or *Deskins.* I do not believe our appellate courts have expressly held that we should construe the statutory phrase "area within [the arrestee's] immediate presence" with any standard routinely construed or applied in a federal constitutional analysis. Again, I contend that our analysis should diligently determine whether our appellate courts have previously focused upon and applied the phrase "within such [arrested] person's immediate presence" and that we should not confuse case law where the federal standards rather than Kansas law were applied.

My analysis has shown that we have no guidance from prior case law on the precise issue framed by this appeal, *i.e.*, whether Davison's vehicle remained in the "area within [Davison's] immediate presence" after she had been removed from the vehicle, handcuffed, and placed in the back of the patrol car and arrangements had been made for a friend to take possession of and remove the vehicle.

In the absence of guiding precedent, I would look anew at the statutory phrase and construe it applying well-known standards. In doing so, we should examine and interpret the terms "immediate" and "presence." The words of a statute are the main source for determining a legislative purpose. *In re Marriage of Williams*, 32 Kan. App. 2d 842, 851, 90 P.3d 365 (2004). In construing statutes, the legislature is presumed to have consciously chosen the words used with an understanding of their ordinary and common meanings. *International Ass'n of Firefighters v. City of Kansas City*, 264 Kan. 17, 31, 954 P.2d 1079 (1998). Ordinary words are given their

ordinary meanings. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). When words are used in an ordinary manner, a dictionary definition may be a useful guide to meaning. See *State ex rel. Topeka Police Dept. v. $895.00 U.S. Currency*, 281 Kan. 819, 827, 133 P.3d 91 (2006).

Turning first to the ordinary meaning of "immediate," we note that the common dictionary definitions of the term include "being without the intervention of another object, cause, or agency" and "directly touching or concerning a person or thing." Webster's Ninth New Collegiate Dictionary 601 (1991). Black's Law Dictionary 764 (8th ed. 2004) includes the definitions "not separated by other persons or things" and "having a direct impact; without an intervening agency." Noting that our statute employs this term as an adjective to modify the term "presence," we must determine not only whether the area searched was within the "presence" of Davison, but whether it was within her "direct" or "unseparated" presence, or otherwise a presence without intervention of other objects or causes.

The common dictionary definitions of the term "presence" include "the part of space within one's immediate vicinity." Webster's Ninth New Collegiate Dictionary 930 (1991). Black's Law Dictionary 1221 (8th ed. 2004) includes as definitions "[c]lose physical proximity coupled with awareness." Accordingly, we must examine whether the area searched was within the direct vicinity of Davison—within close physical proximity and awareness.

Applying these definitions, I would hold that the statutory phrase "the area within [the arrestee's] immediate presence" means the area must be within the direct, unseparated vicinity of the arrestee, with no intervention preventing direct access to and awareness by the person. Such an area would clearly *not* include the vehicle under the circumstances in this case; Davison had indeed been *separated* from her vehicle and was no longer within its *direct vicinity*. Moreover, at least two *interventions* had occurred preventing her continued direct access: (1) she had been arrested, hand-

cuffed, and placed in a patrol car; and (2) her car had been tendered to a friend who was on the way to take possession. I would faithfully construe the terminology within K.S.A. 22-2501 and conclude the search of the vehicle was not within the scope intended by the statute, thus requiring the fruits of the search to be suppressed.

This analysis would be definitive on the issue presented here, but I must also note that my construction and application of the statute is entirely consistent with well-established principles of inventory searches, precluding random searches of vehicles upon arrest without some indicia of reasonableness. See *State v. Shelton*, 278 Kan. 287, 93 P.3d 1200 (2004). *Shelton* is the most recent in a long line of Kansas cases that have established guidelines for vehicle searches, usually after the arrest of the driver or other occupants, to prevent " 'general rummaging in order to discover incriminating evidence.' " 278 Kan. at 1209 (quoting *Florida v. Wells*, 495 U.S. 1, 4, 109 L. Ed. 2d 1, 110 S. Ct. 1632 [1990]). This entire line of cases is at risk if not effectively abolished by the majority's view in this case. Why bother with reasonableness or lawful impoundment, or any other of myriad issues that generally arise in the inventory search cases? If the arrestee has been removed from a vehicle, that vehicle is fair game for comprehensive search without any further showing whatsoever. I simply cannot square the majority's view with our long line of inventory search cases—all of which are based on sound constitutional principles.

Additionally, the confusion reflected in our case law since the initial enactment of K.S.A. 22-2501—particularly the persistent confounding of *Belton* principles with our statutory language— merits attention and abatement. We must be vigilant to distinguish the rationale applied by the United States Supreme Court in a federal constitutional analysis from the language in our own statutes and constitution. Here, where our legislature has long ago decided that searches incident to arrest should be governed by our own statute, we should refrain from determining legislative intent or general application of our statute by any guidance from the federal courts. Our Kansas citizens have come to expect their liberties to be guarded pursuant to long-standing principles an-

nounced by our legislature and appellate courts, and we should not depart from that expectation unless absolutely required to do so by the Supremacy Clause.

Finally, I must demonstrate what a sad day it is for the Fourth Amendment when a search of this nature is permitted. "If there is no controlling statute or exception to the warrant requirement that permits law enforcement to enter the vehicle [under these circumstances], then the defendant retains a limited expectation of privacy in its interior." *Shelton*, 278 Kan. at 1210 (Beier, J., concurring). Here, Davison was stopped for failure to dim her lights, arrested for an outstanding traffic warrant, removed and securely stowed in the squad car, and without any further showing whatsoever, her car was subjected to a comprehensive search by two law officers. There was no reason to expect contraband based on the crime of arrest, there was no fear of officer safety, and there was no other reasonable basis whatsoever to search the vehicle. I would simply argue this is not consistent with the Fourth Amendment's guarantee people are to be "secure" from unreasonable searches.

I would reverse the district court, suppress the fruits of the search of Davison's vehicle, and remand for further proceedings.